| ISAAC MAYO, EXC'R OF THEODORICK BLAND vs. SARAH BLAND. | December Term, 1851. |

[CONSTRUCTION OF WILLS—LEGACIES—LEGATEE—LEGACIES TO A WIDOW—CHANCERY PRACTICE—-COMMISSIONS TO EXECUTORS.]

A DEVISE of "all my property real and personal of every description," except certain specified portions, "unto my wife during her natural life" is a general and not a specific bequest.

A devise of "my Bland Air estate, with all the slaves and their increase, which I derived in a course of distribution from my uncle T. F., deceased, and all the personal property thereon, not slaves, and used with the same at the time of my death unto my daughter during her natural life," is a specific bequest.

A bequest of "all my books, historical or biographical, of Greece, of Rome, of Great Britain or Ireland, of the United States, and of the several states, and Rees' Encyclopedia to my son-in-law as a token of my respect for him," is a specific legacy.

A bequest of "all the rest of my books with my household furniture to be preserved by my wife for her own use during her life, as hereinbefore mentioned, or to be sold or given to our children or grand children in such manner and proportions as she may think proper," is a general legacy.

To constitute a bequest of personal estate specific, there must be a segregation of the particular property bequeathed from the mass of the estate, and a specific gift of the separated portion to the legatee.

In case of a deficiency of assets to pay debts, general legacies must be exhausted before the specific legacies can be resorted to for contribution, and this rule prevails though the general legatee be the widow of the testator, where the provisions made for her by the will exceed her common law rights, at least so far as the excess is concerned.

If the provision made for the widow, who abides by the will, does not exceed her common law rights, a general legacy to her will not abate to pay debts in favor of specific legatees, she being considered a purchaser with a fair consideration.

A widow cannot renounce the will as to personalty, and claim the benefit of it as to the realty; she must either renounce the whole or be barred as to both the realty and personalty.

An averment in a bill, "that the property bequeathed to the widow is liable to to pay debts" is a sufficient averment, that the benefits taken by her under the will are greater than her legal rights, because such liability depends upon this fact.

The devise of "my Bland Air estate, and all the slaves and personal property thereon, not slaves, and used with the same," passes the crops and produce on the farm, at the time of the testator's death, and also the furniture in the dwelling house standing upon the farm, and used by those occupying it.

Commissions to an executor will not be distributed so as to be thrown upon the separate portions of the personal estate, in order to make the several legatees, general and specific, bear their proportions thereof; such a distribution would be introducing an entirely new principle in our testamentary system.

[The clause of the will of the late Chancellor Bland, which came under review in this case, are as follows:

1st. "I do hereby give and devise all my property, real and personal, of every description, except Bland Air, and the slaves, with their increase, which I derived in a course of distribution from my uncle, Thomas Fitzhugh, deceased, and the other personal property thereon, not slaves, and used with the same at the time of my death, and except the bequests hereinafter mentioned, unto my wife during her natural life, confiding to her the care and maintenance of our son, should he so live long.

2d. "I do hereby give and devise my Bland Air estate, with all the slaves and their increase, which I derived in a course of distribution from my uncle, Thomas Fitzhugh, deceased, and all the personal property thereon not slaves, and used with the same at the time of my death, unto my daughter during her natural life, and after her death as hereinafter provided, she or the persons taking after or under her paying therefor to her mother during her natural life, annually, to be computed from the day of my death the sum of three hundred dollars, by way of a rent charge.

3d. By this item, the testator charged all his estate, "real and personal, including the beforementioned Bland Air estate and property, without exception, whosoever may be the holder of the same," with the payment of an annuity to his son of six hundred dollars per annum from the day of his mother's death.

5th. "I do hereby give and bequeath unto Captain Isaac Mayo, the husband of my daughter, all my books, historical or biographical, of Greece, of Rome, of Great Britain or Ireland, of the United States, and of the several states, and Rees' Encyclopedia, as a token of my respect for him. The copy of my reports of cases in Chancery in my use at the time of my death, and in which I have made many additional references in pencil, I wish to be preserved and given to one of my grandchildren by their

parents or the survivor of them.   All the rest of my books, with my household furniture, to be preserved by my wife for her own use during her life, as hereinbefore mentioned, or to be sold or given to our children or grandchildren in such manner and proportions as she may think proper.   All my manuscripts concerning law or any other subject to be burnt as being of no value, and utterly unfit for publication."

The other facts of the case are fully stated in the following opinion of the Chancellor.]

The Chancellor:

Upon carefully reading the will of the late Chancellor Bland, and examining the authorities applicable to the subject, I am of opinion that the bequest to his wife in the first clause, is general and not specific, and the authorities are, in my judgment, equally clear to show that the bequest to his daughter in the second clause is specific.

The cases which are collected and reviewed by *Mr. Roper* in his treatise on the law of *Legacies*, at page 184, *et seq.* of the first *volume*, seems to me to be quite conclusive upon the subject. There may, perhaps, be more difficulty in determining the character of the bequest to the testator's wife in the 5th clause.   In that, after giving to Captain Isaac Mayo, the husband of his daughter, "all his books, historical or biographical, of Greece, of Rome, of Great Britain or Ireland, of the United States, and of the several states, and Rees' Encyclopedia, as a token of his respect," he directed all the rest of his books, with his household furniture, to be preserved by his wife for her own use during her life, as thereinbefore mentioned, or to be sold or given to their children or grandchildren in such manner and proportions as his wife should think proper.

It has been strongly urged by the counsel for Mrs. Bland, that with regard to these books and household furniture, she must be considered as a specific legatee, but I do not think he is sustained by the authorities, or the principle upon which the distinction between general and specific legacies is founded. The bequest of all the testator's personal estate is certainly not

specific, and I cannot well understand how the bequest of all that remains after taking out a particular or designated portion, can be so considered. In order to constitute a bequest of personal estate specific, there must be a segregation of the particular property bequeathed from the mass of the estate, and a specific gift of a specified petition to the legatee. The cases cited in 1 *Roper*, 185, prove this, as do those referred to in 2 *Williams on Executors*, 747, 748. See also the cases collected in the notes to the case of *Kirby* vs. *Potter*, 4 *Ves.*, 748.

The bequest, however, of the books to Captain Mayo, is specific, because they are described with sufficient certainty to enable the legatee to call upon the executor to deliver them over to him in specie.

I am, therefore, of opinion, that in case of a deficiency of assets to pay the debts of the testator, the legacies to the testator's daughter and Captain Mayo would not be liable to abate, with the general legacy to the widow, which must be exhausted before the specific legatees can be resorted to for contribution.

The will was executed in May, 1845, at which time the testator owned certain real estate in the state of Virginia, which he authorized and directed his executors to sell, the proceeds to be applied to the payment of his debts in exoneration of his real and personal estate in this state, and the surplus to be invested as therein directed, and to be held and enjoyed by his wife during her natural life.

Prior, however, to the death of the testator, in November, 1846, he himself made sale of his real estate in Virginia, and some of the bonds taken for the purchase money remained unpaid at that time, which came to the hands of his executor, Captain Isaac Mayo, the other executor, the widow, having renounced the trust.

It is very apparent, that at the date of the will the testator considered that his Virginia property would produce money enough to pay his debts and leave a surplus, and as after he made sale of the property he made no further provision for the payment of his debts, we may, perhaps, reasonably infer that he continued under the impression that the money which his

executor would realize from the unpaid bonds would be ample for the purpose.   At all events, no change was made in his will, and the Virginia property alone was appropriated by the testator for the payment of his debts.

Mrs. Bland having renounced the trust, and letters testamentary having been granted to Captain Mayo, and after some progress had been made in the settlement of the estate, an agreement was made between these parties, dated on the 4th of March, 1847, by which it was stipulated that the money on hand at the time of the death of the deceased, or since received, together with the carriage and horses, and library, which were bequeathed to Mrs. Bland for life, by the general terms of the will, should be sold by the executor for the purpose of paying off debts, or for other purposes, at the discretion of the executor, the agreement reciting that a similar arrangement might be made as to the other parts of the estate of said deceased, which were in like manner devised, the arrangement being intended to relieve other portions of the estate from the pressure of debts, until a certain fund in the estate of Virginia could be received.   And it was further agreed that Isaac Mayo should pay to Mrs. Bland interest on the said sum of money every six months during her life, and be substituted as executor to all right in the said fund in Virginia, so far as the amount of said sales shall go towards making up said sum.   And there was a further stipulation that if the Virginia fund should exceed the amount of debts, Mayo was to pay Mrs. Bland interest in like manner on the excess.

It can scarcely be doubted, that when this agreement was made the parties both supposed the Virginia fund would be sufficient to pay the debts of the deceased, who had then been dead about four months, and consequently the executor could not have known the actual situation of the estate.

Subsequently to this agreement, but the precise time does not appear, Messrs. Randall and McLean, the persons mentioned in said paper, who were to ascertain the amount for which interest should be paid, and how, and in what manner it should be secured, made a statement, according to which, the sum upon

which Captain Mayo was to pay interest was ascertained to be $2702 10, and the half yearly interest, being $81 06, he was to pay on the 16th of May and November, of each year, so long as Mrs. Bland should live.

By this statement it appeared that the books in which Mrs. Bland had a life-estate, produced $1270. The cash on hand, and arrears of salary due deceased amounted to $851 50, and that the carriage and horses produced $600, amounting in all to $2722 10, from which there was deducted a fee of $20, leaving a sum of $2702 10, as the amount upon which interest was to be paid.

I do not think that by any fair construction of this agreement it can be maintained that Captain Mayo intended to run the risk of the inadequacy of the Virginia fund, to pay the debts of the deceased. He could not then, on the 4th of March, 1847, have known the actual condition of the estate, and it would require very plain language to induce any court to believe that under these circumstances he designed assuming upon himself the whole risk of a deficiency.

Of the sum upon which he agreed to pay interest during the life of Mrs. Bland, eight hundred and fifty-one dollars, being nearly one-third of the whole amount, consisted of cash and arrears of salary, in regard to which no possible doubt could be entertained that it was responsible for the payments of debts, there being no pretence that the bequest of it was specific, whatever may be thought of the bequest of the books and other articles of personal property sold. The plain sense of the agreement is, that the property bequeathed Mrs. Bland should be sold and applied in anticipation of the receipt of the funds expected from Virginia, and as it was supposed those funds would be sufficient to pay the claims of creditors, it was agreed that the executor should pay Mrs. Bland interest upon so much of her money as was taken to pay creditors, and be himself reimbursed out of the Virginia fund when received. If Mayo intended in any event to assume to pay Mrs. Bland interest on the amount of sales, &c., and incur the risk of the sufficiency of the Virginia fund, why was it stipulated that he should be substituted as

executor to all right, so far as the sales should be applied in lieu of and in anticipation of that fund. As executor, he, of course, was entitled to receive the fund, and there could have been no necessity for substituting him for that purpose, and the only object of the agreement was to enable him, after paying the debts of the deceased out of the property and money which were thereby made applicable to that purpose, to reimburse himself. That is, if the Virginia fund had been collected and with it the debts of the testator paid, Mrs. Bland would have been entitled for life to the property and money bequeathed to her, and if Mayo had sold that property and taken that money in trust for the parties entitled in remainder, he must have paid Mrs. Bland interest on the amount for life. But as her property and the money were taken, it was the design of the agreement to that extent that Mayo should hold the Virginia fund in lieu of it, and pay her interest upon it for life.

It was, however, subsequently discovered, that the Virginia fund was not sufficient to pay the debts of the testator, and consequently, according to the opinion I have formed of the character of the bequest to Mrs. Bland, the property embraced in that bequest, was liable to supply the deficiency. Certainly, so far as the cash on hand and salary are concerned there can be no difference of opinion on the subject, for no one can say the bequest so far as those items are concerned is specific.

When this discovery was made does not appear, but it does appear that some time after the statement, No. 4, was made, Captain Mayo refused to pay the semi-annual interest, and refused and instructed his counsel to refuse to give the judgment by which the payment was to be secured.

In this state of things, and after some negotiation between the counsel of the parties, it was agreed that a case should be docketed, by consent, and judgment confessed, subject to an agreement filed in Anne Arundel County Court, on the 25th of October, 1849, whereby it was stipulated that the damage should be relieved on payment semi-annually of the interest on the sum mentioned in the statement before referred to. But it was also expressly agreed, "that the judgment was rendered in settlement

of the agreement of the 4th of March, 1847, and that the confession of the judgment should not preclude any defence the said Mayo might have in equity, (if any he had,) and that the question might be presented as the said Mayo may be advised, to the Chancellor, on proper proceedings for that purpose, whether the surplus of the debts over the fund provided by the testator specially, for the payment ought to fall upon Mrs. Bland, or the property held by her under the will of Theodorick Bland, deceased, or otherwise and in what proportions." And in order that all questions reserved might be properly decided, it was understood, that said Mayo should file his bill, &c.

I do not understand that it is very strenuously urged that Captain Mayo has forfeited his right to have these questions examined and decided in this court, by reason of the judgment confessed by him in pursuance of the above agreement, and certainly I can see no possible ground upon which it could be so insisted. There can be no doubt, I think, that whilst Mayo was willing to give the judgment, he meant to do so with a reservation of his right to litigate these questions, and that the plaintiff in the judgment was willing to take it upon these terms, and this mutual understanding of the parties is expressed in language altogether free from ambiguity.

It remains then to be considered whether the bequests to Mrs. Bland, though general, and though the property to which they apply would undeniably be liable to the claims of creditors before specific legacies could be resorted to, shall be protected to the prejudice of the specific legatees, in consequence of the relation she bore to the testator. In other words, whether the rule of law relative to general and specific legacies shall be reversed when the general legatee is the widow of the testator.

The ground upon which this preference is claimed for the widow is, that by the act of 1798, ch. 101, sub ch. 13, it is declared, that a widow accepting or abiding by a devise in lieu of her legal right, shall be considered as a purchaser with a fair consideration. Such is the provision in the act referred to, and it may be that if the devise or bequest to the widow, or the benefits she takes under the will do not exceed her common law

rights, the principle contended for would be a sound one. But if the provisions made for her by the will do exceed her common law rights, I cannot conceive upon what just principle the position can be maintained, so far at least as the excess is concerned. It appears to me quite clear, that there is nothing in the language of the Court of Appeals in *Gibson* vs. *McCormick*, 10 *Gill & Johns.*, 111, 112, upon which the rights of widows can be carried to the extent now contended for. In this case, Mrs. Bland, by the will of her husband, receives and enjoys during her life the whole income of his real estate, and of the personal estate she is in the possession and enjoyment of, all which was in the city of Annapolis, except the books, the cash on hand and salary, and the carriage and horses.

There can be no doubt, therefore, that by standing by the will, Mrs. Bland's condition is much better than if she had renounced. The legislature, by the act referred to, does not give to widows, when real and personal estates are devised to them, the privilege of renouncing as to one and abiding by the will as to the other. They must renounce the whole, or be barred as to both the realty and personalty. It was not, therefore, at the option of Mrs. Bland to renounce her husband's will so far as the bequest of the personal estate was concerned, and claim the benefit of it with respect to the realty, and, therefore, I cannot well understand what equity she has to insist that a plain principle of law shall be reversed in her case, when, without such reversal and subjecting the devises and bequests of this will to the general rule of law, she still is a great gainer by standing by its provisions.

There is, moreover, another provision in this will which displays with great force the injustice that would be done by adopting the principle insisted upon by the defendant. Upon the death of Mrs. Bland, the testator directs that an annuity of six hundred dollars shall be paid his son, by his daughter, Mrs. Mayo, to whom the "Bland Air" farm and the personal property thereon were given, and he charges said estate, and the property thereon, with the payment of said annuity. Now the proceedings show, that if the personal property bequeathed generally to

Mrs. Bland is not liable for the payment of debts, that or the "Bland Air" farm must be so applied, and thus the property on which and in respect of which the charge of the annuity of $600 was imposed, would be diminished whilst the charge itself would remain in full force.

Upon the whole, then, and in view of all the circumstances of this case, I am of opinion, that the property bequeathed generally to Mrs. Bland, was liable for the payment of the debts of the testator, and the expense of the administration of his estate before the specific bequests could be resorted to, and that there is nothing in the agreements and acts of the parties which precludes the executor from raising the question in this cause. And I am also of opinion, that the technical objection to the frame of the bill cannot be maintained. The bill alleges that the cash on hand and moneys due the deceased, and proceeds of the personal property, so as aforesaid, sold by the executor, with the consent of Mrs. Bland, were applicable to the payment of debts, and prays that the same may be so applied, and that the judgment against the complainant rendered in pursuance of the agreement before referred to, shall be so corrected and reduced as to require him to pay interest only on the sum actually due from him, after applying said cash and proceeds and the money received from the Virginia fund to the payment of the debts of the testator; and for this purpose that an account may be taken in this court. There is, to be sure, no express allegation in the bill that the devises and bequests to Mrs. Bland exceed the value of her common law rights. But when the bill avers, as it does, that the property so bequeathed and money is liable to pay debts, if that liability depends upon the fact that the benefits taken by Mrs. Bland under the will are greater than her legal rights, the fact itself must be regarded as substantially averred.

The case of *McCormick* vs. *Gibson* is not an authority to prove that this question may not be presented without an explicit averment in the bill, of the excess of the provision over the common law rights of the widow. The court, in that case, held the widow to be entitled to the provision made for her by

41*

the will, because there was neither allegation *or proof* that the provision was larger than she would otherwise have been entitled to.

The defendant, by her answer in this case, and her counsel in the argument, has raised several questions upon the accounts passed by the executor in the Orphans Court. Among other objections to these accounts, it has been said that the crops and some articles of personal property on "Bland Air" did not pass by the devise to Mrs. Mayo in the second clause of the will. In construing this devise, we must of course, as in every case of the kind, ascertain, if we can, the intention of the testator, and my strong conviction is, that he did intend to give his daughter the crops and property in question. I do not think it can be fairly inferred, that he intended to give her his slaves and farm stock, and withhold from her the crops and produce of the farm essential to their support, and raised on the farm to which they belonged. Neither can I persuade myself to think that when he gave her the "Bland Air estate," and all the personal property thereon, and used with the same, that he meant to deny her the furniture in the dwelling house, which stood upon the farm and was part of the estate, and which was used by those occupying it. Although the furniture in the house may not have been used with the farm, that is, in cultivating the land, it was used with the estate, the house being of course part of the estate and the furniture being used with the house.

With regard to the objection that the commissions of the executor should have been so distributed as to be thrown upon the separate portions of the personal estate, and thus make the several legatees general and specific bear their proportions thereof, I am of opinion it cannot be maintained. It would be introducing an entirely new principle in our testamentary system, for which no authority has been, nor, as far as I am informed, can be produced.

There are other matters connected with the accounts which I shall reserve until the coming in of the report of the Auditor, to whom I shall send the cause, with instructions to state an account according to the views herein expressed, from the plead-

ings and proofs now in the cause, and such further proofs, if any, as the parties may lay before him.

———

A. RANDALL, for Complainant.
DANIEL M. THOMAS, for Defendant.