**HUNTINGTON NAT'L. BANK v ROAN, et**

Ohio Appeals, 2nd Dist., Franklin Co.

Nos. 1993-1997.
Decided April 2nd, 1931.

292

Herman R. Tingley, Columbus and S. A. Hoover, Columbus, on behalf of the plaintiff.

T. J. Duffy, Columbus and James I. Boulger, Columbus, on behalf of defendants Thomas E. Roan and John M. Roan and Frank J. Roan.

John A. Connor, Columbus and M. N. Nachman, Columbus, on behalf of defendant Ruth D. Roan.

Francis J. Wright, Columbus and J. C. Harlor, Columbus, on behalf of the defendant, The First National Bank of Hazard.

C. E. Blanchard, Columbus, on behalf of defendants, C. F. Kelly and S. T. Kelly, A. T. W. Manning, W. E. Faulkner and T. F. McConnell.

R. W. Poppleton, Columbus, on behalf of The Buckeye State Building & Loan Company.

OPINION

By HORNBECK, J.

This action was instituted by the plaintiff filing a petition in the Common Pleas Court, this county, seeking the construction of Items IV, VI and VII of the Last Will and Testament of John M. Roan, deceased.

Ruth D. Roan, is the widow of John M. Roan, deceased. Defendants, Thomas E. Roan, John M. Roan, James A. Roan and Frank J. Roan, are sons of John M. Roan. Defendant, Kathleen Roan, is the wife of James M. Roan, and Margaret G. Roan the wife of Frank J. Roan. Defendant, T. F. McConnell, is a judgment creditor of James A. Roan. Defendants, C. F. Kelly, Martin Kelly, A. T. W. Manning, W. E. Faulkner and T. F. McConnell, are attorneys at law in the State of Kentucky, who represented James A. Roan in a criminal case, to which we will hereinafter refer. Defendant, The First National Bank of Hazard, Kentucky, is a creditor of James A. Roan.

The Buckeye State Building & Loan Company holds a note against John M. Roan, deceased, and a mortgage on certain real estate devised by his will.

Herman R. Tingley, originally a party defendant, withdrew his answer, and was dismissed from the case.

The petition further recites that the widow, Ruth D. Roan, claims that the personal property of the estate of John M. Roan, deceased, should be exonerated from the payment of his debts, and that all the debts of said estate should be charged against the real estate, and that she is entitled to a sum of $8,547.66, which was secured as a loan from the Buckeye State Building & Loan Company by John M. Roan on the 8th day of June, 1928; that to secure said sum John M. Roan and Ruth D. Roan, his wife, executed and delivered a mortgage on certain of the premises devised in Item Sixth of the Will to the four sons of the testator; that the sole purpose of securing said loan was to provide funds which would be available to pay and discharge a certain liability then being asserted against James A. Roan by the First National Bank of Hazard, Kentucky, which fund, however, was not to be used to satisfy such claim until after a certain indictment against James A. Roan pending in Federal Court was dismissed; that said John M. Roan delivered said fund to Herman R. Tingley who was to hold and administer it until such time as would appear whether said sum could be applied to the purpose for which it was obtained, and then to apply said fund, if possible, but that if said purpose for which said fund was obtained failed, then to return the same to the said John M. Roan.

The petition avers that there was at the time the petition was filed in the fund above mentioned a balance of $8,547.66; that James A. Roan was acquitted upon the trial of the offense for which he was indicted, and that the fund has been returned to the plaintiff, executor, by Herman R. Tingley; that Ruth D. Roan, widow of John M. Roan, is claiming said fund under the Fourth Item of the Will; that the defendants, T. F. McConnell, C. F. Kelley, Martin T. Kelley, A. T. W. Manning and W. E. Faulkner and the First National Bank of Hazard claim to have an interest in said fund as creditors of James A. Roan.

Answers and cross-petitions were filed by all of the defendants mentioned in the petition, excepting Kathleen Roan and Margaret G. Roan.

The items of the Will of John M. Roan, which are to be construed, are, FOURTH:

"I will and direct that should my wife comply with the terms and conditions of the ante-nuptial agreement, dated April 27th, 1925, hereinbefore referred to, that all my personal property, whether it be in the form of cash, bonds, securities of any description, household goods and furnishings, and jewelry, or any other personal property of which I may be the owner at the time of my death, except the business known as the Beech Grove Coal Company owned and operated by me, shall go to and be the property of my wife, Ruth D. Roan, absolutely."

"ITEM SIXTH: All of my real estate in the city of Columbus, Franklin County, Ohio, I give, bequeath and devise absolutely and in fee simple to my four sons, Thomas E. Roan, John M. Roan, J. A. Roan and F. J. Roan, share and share alike."

"ITEM SEVENTH: All the rest of my property, including lands in Vinton County, Ohio, and Perry County, Ohio, and the business known as the Beech Grove Coal Company, not hereinbefore disposed of, I give, devise and bequeath absolutely and in fee simple to Ruth D. Roan, Thomas E. Roan, John M. Roan, J. A. Roan and F. J. Roan, share and share alike, and it is my will that the provisions made for my wife, Ruth D. Roan, in this item, and in Item Fourth of this, my last will and testament, shall be in addition to the provision made for her in the ante-nuptial agreement, dated the 27th day of April, 1925, and hereinbefore referred to."

The facts which raise the principal issue in this case are, briefly, that James A. Roan, a son of John R. Roan, prior to June, 1928, was indicted for a Federal offense claimed to have been committed by him while acting as cashier for the First National Bank of Hazard, Kentucky. The indictment grew out of a transaction wherein James A. Roan had loaned a sum of money to a corporation in which he was a director in excess of the amount permitted by law. The bank was desirous of securing its money; the father and brothers desired to save James A. Roan from trial.

The father borrowed $8,750 from the Buckeye State Building & Loan Company and executed a mortgage in which Ruth D. Roan, his wife, joined, covering certain of the premises devised by Item Sixth of the Will. The proceeds of this loan were deposited with Herman R. Tingley for the purpose of paying the First National Bank of Hazard, which payment was to be made, according to the testimony of Mr. Tingley, when the indictment against James A. Roan was nolled or dismissed. The criminal case was

tried once and the jury disagreed. Upon second trial, the court directed a verdict of acquittal. Thus this specific purpose for which the fund was turned over to Herman R. Tingley never did arise.

Herman R. Tingley, testifying further to the conditions and instructions under which he was entrusted with the fund states that he suggested to Mr. Roan, Sr. that if the money was gotten and the occasion to use it for the purpose for which it was primarily raised did not arise it could be paid on the loan at the Building & Loan Association and that Mr. Roan said that would be satisfactory.

Objection was made by counsel for the First National Bank of Hazard and on behalf of Mr. Kelly and his associates to Mr. Tingley testifying, claiming that he is an incompetent witness under §11495 GC. Suffice to say that inasmuch as he was called by the executor for whose benefit the ▇▇▇▇▇ statute operates, this section is not applicable to render him incompetent.

It is further asserted that Mr. Tingley is disqualified to testify under §11494 GC as it is claimed that his testimony was given as an attorney concerning a communication made to him by his client in that relation, and that he does not come within the exceptions accorded to an attorney under the statute. As all parties, save those hereinbefore indicated as objecting and excepting to his testimony, conceded that it was competent, its probative effect would operate, even though it was not admissible against those who objected to it. But we are of opinion that the testimony was competent.

If the transaction under consideration was an escrow, Mr. Tingley, as the depositary, was the agent for both parties. **21 Corpus Juris,**

**870. Lessee of Shirley v Ayres, 14 Ohio, 310. Davis, et v Clark, (Kan.) 48 Pac. 563.** If the transaction was a trust, then Mr. Tingley sustains the relationship of trustee. In the capacity of either depositary or trustee he was acting in a separate and distinct relation from that of attorney, and his joint obligation was essentially inconsistent with the confidential relation of attorney and client.

Though Mr. Tingley could be said to have acted as attorney for Mr. Roan we believe that the transaction under consideration is tantamount to an exception to the statute. The obligation of Mr. Tingley to effectuate an express direction of one of his principals, Mr. Roan, Sr., would be equivalent to express consent that he do all things necessary to carry out the obligation, which would include the giving of testimony, if required.

We have been in some doubt whether the transaction concerning the disposition of the fund under consideration is an escrow or a trust. At common ▇▇▇▇▇ law escrow related only to the depositing of written instruments, and there is respectable modern authority to the same effect. **Glendenning, et al. v Slayton, et al, (Mont.) 179 Pac. 817.**

It is said in **39 Cyc., page 70:**

"Where a person has or accepts possession of money, * * * with the express or implied understanding that he is not to hold it as his own absolute property, but is to hold and apply it for certain specific purposes, * * * a valid and enforceable express trust exists."

Nor

"Is it essential to the existence of a valid trust and the right of the beneficiary to enforce the same

that he have knowledge thereof at the time of its creation." 39 Cyc. 79.

We are inclined to say that we have here an express trust created by John A. Roan, the interest of the beneficiaries, James M. Roan and The Buckeye State Building & Loan Company, to vest upon the happening of conditions precedent. The condition upon which James M. Roan's interest would pass to him being the nolle or dismissal of the indictment against him. The condition upon which the interest of The Buckeye State Building & Loan Company would vest would be the failure to nolle or dismiss the indictment.

However, it makes little difference how we characterize legally the directions which John A. Roan gave to Mr. Tingley, or the agreement under which he took over the fund.

The right of defendants and cross-petitioners, C. F. Kelly, Martin Kelly, A. T. W. Manning, W. E. Faulkner and T. F. McConnell for services rendered James A. Roan, and of the First National Bank of Hazard, Kentucky, are based upon the claim that the fund in question was the property of James A. Roan.

Upon the testimony of Mr. Tingley, and from all circumstances in the case, it seems to be established that this fund did not become the property of James A. Roan.

It is further disclosed by the testimony of Mr. Kelly that the First National Bank knew and understood through Mr. Morgan, its President, that as a prerequisite to securing the money for the bank, the indictment against Mr. Roan was to be dismissed.

We may briefly consider some of the specific propositions urged on behalf of Mr. Kelly and his associates. The receipt of date June 8, 1928, signed by J. A. Roan, wherein he acknowledged the indebtedness to his father in the sum of $8750.00 and agreed that it should be an advancement to him in the event of the death of John M. Roan in the settlement of his estate, wherein he covenants and agrees to pay the interest on the loan to The Buckeye State Building & Loan Company, and agrees that the memorandum is made for the benefit of his three brothers to protect their interests in the estate of John M. Roan.

This agreement in the light of the testimony was executed and delivered and to become effective, if and only, when Mr. Tingley was required to pay over the fund under the agreement by which it was placed in his hands. As this arrangement was never consummated, the instrument which J. A. Roan signed never became effective.

The agreement of date August 22, 1928, signed by Ruth D. Roan, John M. Roan, James A. Roan and Frank J. Roan, which in substance, was carried into the entry spread upon the record of the Probate Court of date September 10, 1928. Again these instruments must be construed in view of the situation and circumstances under which they were made. Through all the testimony there runs a certain indication that the father during his lifetime, his wife and all the brothers of James A. Roan, were willing to do any and all things which were necessary to assist James A. Roan out of his difficulty in Kentucky. The death of Mr. Roan, Sr., complicated matters. Mr. Tingley having turned the fund over to the executor of John M. Roan added to the difficulty. So that the transaction could be carried out as originally contemplated, the agreement and entry were prepared. We do not see that they change the status of the parties. The out-

standing provision of the agreement is that the fund be turned over and become the property of James A. Roan in accordance with the intention of the testator, expressed in a memorandum or agreement drawn by and between the late John M. Roan, deceased, and his son, James A. Roan.

We have heretofore considered the purpose and effect of this memorandum. The entry was of like tenor and effect. In so far as the parties entered into an agreement between themselves inconsistent with their present position in this case it may be said that their agreement was for the benefit of a third party, and they had a right to rescind it, which has been done.

We are, therefore, in no doubt that our finding must be against the attorneys of James A. Roan, against the First National Bank of Hazard, and against Mr. McConnell.

The next question raised is whether or not the fund which was in the hands of Mr. Tingley, as trustee or escrow agent, shall be considered personal property and pass as such, under the Will of John M. Roan, deceased.

For the sons of John M. Roan, it is claimed that the fund should be considered real estate because a fair interpretation of the Will discloses the intent of the testator to have it considered as real estate, or, that the fund should be applied to the payment of the mortgage, in compliance with and in furtherance of directions of John M. Roan to Mr. Tingley when the fund was created. We believe that upon the latter proposition the claim of the sons may be safely grounded. That Mr. Roan, the father, had a right to mortgage the property for the obvious purpose for which it was pledged, and to indicate to Mr. Tingley the conditions under which it should be disbursed and what disposition should be made of it in the event that it was not expended for James A. Roan, is certain. It is established by convincing testimony that Mr. Roan, Sr., not only provided for the disposition of this fund in the event the indictment against his son was nolled, but likewise for its disposition if it should not be used in conjunction with the indictment against his son. This latter provision was definite to the effect that it should be used to liquidate the indebtedness which was secured by the mortgage.

Mr. Roan, Sr. having died before this trust created in Mr. Tingley had been executed, can it be said that the death of Mr. Roan will prevent a Court of Equity from observing its specific terms? We see no impediment to carrying out the intention of Mr. Roan, Sr. Whether escrow or trust it is essential to either that the creator relinquish ownership or control of the subject matter. This was done by Mr. Roan, Sr. during his lifetime, and no reason appears why this fund should not be distributed according to the binding obligation under which it was created and independently of the Will. The act of Mr. Roan which gives effect to the disposition of this fund operates from the time when the escrow agreement was made or trust was created, and must be carried out, although some part of the obligation is to be performed after the death of Mr. Roan.

We are therefore of opinion that the executor now holding the fund is chargeable with the same obligation which was imposed upon Mr. Tingley, viz., to pay this fund and remove the mortgage, according to the directions of Mr. Roan, Sr.

The next and final question for consideration is the source from which the debts of J. M. Roan, deceased, must be paid.

The only figures we have respecting the indebtedness of the estate are those found in the brief of counsel for defendant, Ruth D. Roan, which seem to have been taken from certain exhibits. Assuming all the debts are correct in items and amounts as set forth in said brief we express our views of the method of payment.

The residuary estate, or property devised and bequeathed by Item 7 of the Will, should be used to apply to the payment of the indebtedness of John M. Roan, including the balance due the Buckeye State Building & Loan Company on its thousand dollar mortgage, and excluding any balance due on the $8750.00 mortgage. The property included in the residuary clause will be insufficient to liquidate all of the indebtedness.

The balance due the Buckeye State Building & Loan Company on its $8750.00 mortgage should be a charge on the real estate covered by the mortgage. In the light of all of the evidence this seems equitable. It is evident that Mr. Roan did not want the bequest to Ruth D. Roan enhanced by the proceeds of this loan and such claim has been urged with much force and we would have so held had it been necessary to dispose of the question respecting the fund raised for James N. Roan. On the other hand, Mr. Roan did not expect Ruth D. Roan to contribute out of her bequest in Item IV to pay any indebtedness of his estate growing out of the transaction resulting in the mortgage in question.

The balance due after the credit from the proceeds of the residuary estate on the one thousand dollar note secured by mortgage on a parcel of the real estate devised to the sons, and which mortgage was in existence when the Will was executed, should stand as a charge on such real estate.

Glass, et al, v Dunn, et al, 17 Oh St 423. This is required by the first few paragraphs of the opinion in the above case.

"It seems to be well settled law, that a specific devisee of land encumbered by mortgage, cannot, as between him and general pecuniary legatees,—and a fortiori, he cannot, as between him and specific legatees or devisees—avoid the burden of paying the mortgage debt. He takes the land cum onere, unless the debt can be satisfied out of the personal assets, after payment of debts and legacies, ▮▮▮▮▮▮▮ out of land descended to the heir, or from some fund provided in the will for its payment. As between him and his co-devisees and legatees he takes only the equity of redemption in the land devised, and must himself pay the mortgage debt if it is to be paid."

The remaining indebtedness will be required to be paid by the proceeds of the personal property mentioned in Item IV of the Will.

In reaching this conclusion we determine that the VIIth Item is the residuary clause in this Will. It has all the indicia of a residuary estate. The language employed "all the rest of my property" is the usual and customary ▮▮▮▮▮▮▮ expression employed in defining residuary estates. Its position in the Will being the last item thereof also supports the conclusion. The case of Hart v Hart, Admstx., 27 O. L. R. 270, cited to support the claim that Item IV is the residuary clause is distinguishable from the instant case. The testator having blended

the personalty and realty in the item indicates a purpose to consider it as the same class of property. The residuary estate is only that portion of the estate which remains after the payment of debts and other classes of legatees, and it is conditional upon something remaining after the paramount claims on the testator's estate are satisfied. 40 Cyc. 1902.

We hold that Item IV is a specific bequest. In Kearns v Kearns, 76 N. J. Eq. 453:

"A bequest of all my household goods, cash on hand, or in bank, life insurance and all other personal property of every description"

is a specific legacy so far as the goods, cash, etc. were concerned, although a general legacy as to all other personal property passing by the bequest. We do not have the proportions in which the various items of property mentioned in Item IV are constituted. In Mayo v Bland, 4 Md. Ch. 484,

"A bequest of all my books, historical or biographical, of Greece, of Rome, etc.,"

held to be a specific bequest. In a note to Re Snyder, 11 L. R. A. N. S. page 55, cited by counsel for the sons of John M. Roan, a definition of specific legacy is given:

"A general legacy has no reference to the actual state of the testator's property, it being only supposed that he has sufficient property with which to satisfy it. While in the case of a specific bequest it must be a part of the testator's property itself. In the second place, it must be a part emphatically as distinguished from the whole. It must be what sometimes

has been called a severed or distinguished part. It must not be the whole in the meaning of being the totality of the testator's property, or the totality of the general residue of his property after having given legacies out of it. But, if it satisfies both conditions, that it is a part of the testator's property itself and is a part as distinguished from the whole or the whole of the residue then it appears to me to satisfy everything that is required to treat it as a specific legacy."

"A legacy is specific when it is the intention of the testator that the legatee shall have the very thing bequeathed and not merely a corresponding amount in value." Wallace v Wallace 23, N. H. 149.

"A bequest to one person of all the testator's personal property, excepting his merchandise, books, accounts, notes and fixtures in a certain store bequeathed to another person makes the legacy of the property accepted a specific one." Kelly v Richardson 100 Ala. 584.

In determining if the specific devisees shall contribute to pay a portion of the indebtedness we are of opinion that the statutes, §10583 GC, and 10584 GC, have no application to require contribution from the devisees.

Sec. 10583 reads:

"When any estate, real or personal, devised, is taken from the devisee for the payment of the testator's debts, the other devisees and legatees must contribute their respective proportions of the loss to the person from whom it was taken, so as to make the loss fall equally on all the devisees and legatees, according to the value of the property received by each of them, excepting as provided in the next following section."

Section 10584 reads:

"If, in such case, by making a specific devise or bequest, the testator has virtually exempted a devisee or legatee from his liability to contribute, with the others, for the payment of the debts, or if, by other provision in the will he has prescribed or required an appropriation of his estate, for the payment of his debts, different from that prescribed in the next preceding section, the estate must be appropriated and applied in conformity therewith."

Although these sections of the Code are not free from difficulty and, strange to say, have had little judicial construction, we do not believe they are intended to operate to require contribution from a specific devisee to a specific legatee whose property has been required to pay indebtedness of the estate. As between joint legatees or joint devisees the statutes would, of course, control.

There is some claim urged on behalf of Ruth D. Roan that the bequest to her was for a valuable consideration, namely the observance of the ante-nuptial agreement.

Obviously this was no consideration which would support a preference of this bequest over others. The observance of the obligations of the ante-nuptial contract was not a new consideration but her obligation at all times.

It is further urged by counsel for Ruth D. Roan that inasmuch as the debts at the time Mr. Roan, Sr., made the will were manifestly in excess of the money available to pay them that, therefore, it was not the intent of the testator to take away from Ruth D. Roan that which he had bequeathed her un-

der Item IV of his will. This conclusion does not follow because it is probable that he believed that the value of the residuary estate was much greater than it is now estimated to be and sufficient to pay his indebtedness. The assumption of the Court and counsel concerning the intent of the testator may be conjectural but it must be presumed that the will was made in the light of the law which requires that the personalty of the testator in the absence of direction to the contrary is to be taken to pay debts before the realty.

Finding and decree in accord with this opinion.

ALLREAD, PJ., KUNKLE, J., concurring.