BONHAM *et al. v.* BONHAM *et al.*

(*Knoxville,* September Term, 1943.)

Opinion filed November 20, 1943.

GREEN, WEBB, BASS & McCAMPBELL, of Knoxville, for complainants.

S. F. FOWLER, of Knoxville, for defendants.

MR. JUSTICE GAILOR delivered the opinion of the Court.

The original bill in this cause was filed in the Chancery Court of Knox County by the executors of the estate of Walter M. Bonham, deceased, against his heirs, legatees

and devisees, seeking the construction of certain items of his will. The record comes to this court on the pleadings and a stipulation of facts. Two of the legatees are minors, for whom a guardian *ad litem* was appointed, and the chancellor has expressly authorized this guardian to agree to the stipulation.

Walter M. Bonham died on May 14, 1940, leaving a will in which he appointed his wife, Jennie K. Bonham and the firm of Green, Webb & Bass of Knoxville, Tennessee, his executors. John W. Green resigned as executor after he was appointed; Webb did not qualify, so that the bill herein was filed by the remaining appointees, the widow, Jennie K. Bonham and Leslie Bass as co-executors.

A summary of the pertinent provisions of the will upon which a construction is sought from this court is as follows:

In Item 3, pecuniary bequests in a maximum amount of $10,000 are made, on condition that the net estate amounts to more than $50,000. The will provides the method for arriving at the net estate, and that it shall not be taken to include life insurance, personal belongings, nor the home place which the testator owned jointly with his wife as tenant by the entirety. The net estate did not include any debts or expenses since provision had been made in Item 1 that they be paid first out of his estate. The executors are allowed time, in their discretion, for the payment of the legacies and they are permitted, if they decide that such course is advisable, to pay the legacies with stock in C. M. McClung and Company using the stock in such payment at its book and not its market value. The principal part of the personal property in the estate was in C. M. McClung and Company, of which testator was the president and a large stockholder.

By Item 4 of the will, the wife and daughter of the testator were made residuary legatees and devisees. They are each given 25% of the property absolutely and the other 50% is placed in trust, with the income payable to the wife and daughter in equal shares during their joint lives, and upon the death of either, the survivor is to receive the entire income for the remainder of her life. The final sentence of this Item of the will is:

"I authorize and empower my wife and daughter to dispose, by last will and testament, of the property embraced in said respective trusts in such way and manner as they see fit."

At the time of his death, the testator was indebted in substantial amount to C. M. McClung and Company, to the Hamilton National Bank and the home was encumbered by a mortgage to the Prudential Insurance Company of America.

The notes evidencing the debt to C. M. McClung and Company provided that payment might be made out of the dividends accruing on the stock which was put up as collateral. Except for a comparatively small amount of cash paid by the executors, this debt has been paid by application of dividends which have accrued on the stock since the death of the testator.

In order to release certain life insurance policies and other stock in C. M. McClung and Company, which were held as collateral for the indebtedness at the Hamilton National Bank, Mrs. Bonham paid the indebtedness to the bank out of the proceeds of life insurance on which she was beneficiary and she has been repaid the amount advanced, by the executors, but without interest.

We think these are the facts necessary to determine questions presented by the assignments of error on this appeal.

 The action of the chancellor in adjudging that the indebtedness to the Prudential Insurance Company was a claim against the estate and adjudging that the executors should therefore pay it, is made the first assignment of error by both parties. Since the will was not probated until after Mr. Bonham's death on May 14, 1940, the administration of the estate is controlled by the provisions of Chapter 175 of the Public Acts of 1939. Pursuant to the provisions of that Act, the executors proceeded to advertise for claims against the estate, the first advertisement appearing in May, 1940. Neither the Prudential Insurance Company nor the widow filed any claim on their indebtedness before May, 1941. It seems clear to us that such failure to file the claim barred its payment by the personal representatives out of the assets of the estate. The language of the statute, section 3, Chapter 175 of the Public Acts of 1939, is specific and leaves no room for doubt. By that section it is provided that after advertisement, the failure of a creditor to file his claim for a debt alleged to be owing by the estate, whether said claim be due or not due, within a year of the advertisement, bars payment of such claim out of the assets by the personal representative, relieves the representative of any obligation to set up a reserve for the payment of the claim and justifies him in making distribution and closing his administration without regard to it.

Learned counsel for the executors first assigns the finding of the chancellor that the debt was to be paid by the executors, as error, then proceeds to argue on this assignment that it was the testator's intention to leave the home place to his widow, free and clear from all encumbrances. The section of the Act of 1939 above

cited, which is now the law for the administration of decedent's estates in Tennessee, makes no exception to the claims which must be filed to bring about their payment out of the assets into the hands of personal representatives, and we see no reason for an exception here. Mrs. Bonham by filing the claim with notice to the necessary parties, might have had an adjudication under the further provisions of this statute, but she failed to do so. It appears that the insurance company refused to file its claim against the estate. We hold, therefore, that since such claim was not filed within the year following the advertisement by the executors, that it is barred so far as its payment by them out of the assets of the estate is concerned. Compare *Commerce Union Bank* v. *Gillespie*, 178 Tenn., 179, 188, 156 S. W. (2d), 425.

The first assignment of error of both parties and the only assignment made by the guardian *ad litem*, is therefore sustained.

The second error assigned by the executors is based on the chancellor's finding that the value of the net estate exceeded $50,000, and that it made no difference whether the stock owned by testator in C. M. McClung and Company was appraised at its book or at its market value. Under this assignment, it is insisted that the chancellor should not have fixed the value of the net estate, but rather, should have laid down a rule or formula by which the executors might have fixed the value at the time of their distribution to the beneficiaries. It was alleged in the original bill in this cause, so it was true on December 12, 1942, that at the time of the filing of the bill all important debts of the estate had been paid except that of the Prudential Insurance Company.

▮ Under our decision on the first assignment of error, this debt no longer concerns the executors and will not delay the distribution of the estate. No other reason appears in the record why, upon the entry of a judgment on this opinion, the executors. should not immediately proceed to make a distribution of the assets in their hands according to the terms of the will as construed by the courts. There is no suggestion in the pleadings or stipulation that the book or market value of the stock of C. M. McClung and Company is diminishing, or likely to diminish within any reasonable time. We think, therefore, that on the facts of this case, the second assignment of error is without merit and should be overruled.

▮ The third assignment of error made by the executor is:

"The Chancellor erred in adjudging that the provisions of Item 4 of the will created a valid trust."

No specifications are made, or reasons given for this assignment of error. From our review of the record and the chancellor's decree, we think he was clearly correct in finding and holding as follows:

"The Court orders, adjudges and decrees that the provisions of Item 4 of the said will provide for the creation of a valid trust, the assets of which shall consist of 50% of the residue of the estate, as contemplated by said Item of the will, and that the trust thereby created is an active trust and the Trustee shall be selected as therein provided and shall have the powers and duties therein set forth."

The third assignment of error is accordingly overruled.

The fourth assignment of error is:

"The Chancellor erred in adjudging that the testator's wife and daughter should be repaid the sum of $33,280.06,

which amount was derived from dividends declared by C. M. McClung & Company and applied by said company in reducing the principal of the notes due and owing to it by the testator at his death.''

██ ██ There is no doubt, under the terms of the collateral notes which are exhibits to the original bill, that C. M. McClung and Company had the right to apply the dividends declared on the stock which it held as collateral for the reduction of the secured indebtedness. This was a term of the express contract which the deceased had made with McClung and Company during his lifetime. The beneficiaries of his will took all his property, except his life insurance, subject to the claims of creditors. McClung and Company, as one of his creditors, had a claim against the dividends declared on the stock which they held as collateral, which was superior to any claim of the beneficiaries under the will.

We see no more reason why the executors should repay the amount of the dividends to the wife and daughter than they would have been obliged to do if McClung and Company had elected to file its claim against the estate and been paid its debt by the executors of the assets of the estate. The only difference is the method by which payment of the indebtedness of the estate was obtained by the creditor. And had McClung and Company pursued the second method for the collection of its debt, it would not be seriously insisted that the beneficiaries would be entitled to any repayment whatever. The sum of $33,-280.06 was the amount of dividends so applied by C. M. McClung and Company to the payment of its indebtedness. By electing to pursue this course to secure payment of its debt, the company merely left a like amount of assets in the hands of the executors for distribution. And

it is apparent that the executors have for distribution the same amount now that they would have had if McClung and Company had insisted on the payment of its claim out of assets in the hands of the executors. There was no specific bequest of the stock under the will and the dividends accruing on the stock, pending a distribution of the estate, would have been paid into the hands of the executors not directly to distributees, had they not been impounded by the creditors. These dividends then, along with the other assets, would have been distributed by the executors in accordance with the terms of the will. It seems to us that the share of the wife and daughter is the same, whether McClung and Company took one course or the other for the collection of its debt.

The fourth assignment of error is accordingly sustained and the decree of the chancellor, adjudging the repayment of the sum of $33,280.06 to the wife and daughter, is reversed in that regard.

The fifth assignment of error made by the executors is:

"The chancellor erred in each of his findings and holdings construing the will of the testator."

There are no specifications made nor reasons given for this assignment and we think it fails to meet the requirements for assignments of error under the rules of this court. It is accordingly overruled.

Since this disposes of all the assignments of error, we affirm the chancellor's decree in this cause in all respects except as hereinabove set out. The executors will pay the costs out of the funds in their hands and take credit therefor in the final settlement of the estate.