## ROZELLE WILSON et al., Appellants, v. LUCILLE BURKE SMITH et al., Appellees. —360 S. W. (2d) 78.

Western Section at Jackson. February 21, 1962.

Certiorari Denied by Supreme Court September 7, 1962.

See also 47 Tenn. App. 194, 337 (S. W. (2d) 456.

Ashley & Ashley, Dyersburg, for appellants.

Ewell & Ewell, Weakley & Weakley, A. D. Walker, Jr., Dyersburg, for appellees.

AVERY, P. J. (W. S.). The issue to be decided by this Court grew out of an Intervening Petition filed in the above styled cause by Robena Carthel Cole and Annie Laurie Parker Smitheal, executrices of the estate of Mrs. Nannie G. (R. A.) Burke, deceased, widow of R. A. Burke, long since deceased, to determine whether the estate of Mrs. Burke or the remainder estate of R. A. Burke is entitled to have $4112.50 of the $27,500 proceeds of the sale of 176 acres of land in the above styled cause.

Petitioners claim that said sale proceeds be charged with the aforesaid $4112.50 because that under the will of Dr. R. A. Burke hereinafter referred to, he left all of his personal property to his widow, Nannie G. Burke, and all of his real estate for and during her natural life, and that there was a note executed by R. A. Burke and his said wife to the Federal Land Bank of Louisville, Louisville, Kentucky, on which there was $4112.50 due at the time of his death and which was secured by deed of trust on said land, and which was paid out of the money that belonged to Mrs. R. A. Burke and that she having paid that debt, which was primarily the debt of the estate of her deceased husband from the personal assets of the estate belonging to her, they are now entitled to have restitution to her estate from said real estate sale which would otherwise, under the will of R. A. Burke, go to his devisees, legatees and heirs.

The learned Judge of the Common Law and Chancery Court of Dyer County dismissed the petition upon the

theory that there was no right on the part of the executrices of the will of Mrs. Burke nor her heirs to have the proceeds of the sale of said 176 acres of land charged with this $4112.50 and from his decree so holding, appeal was prayed, granted and perfected to this Court.

The facts in this case are stipulated, except one witness, R. C. Whitnell, Jr. who testified orally in behalf of the petitioners. He was a former Secretary of the Dyer County National Farm Loan Association which serviced the loan to the Federal Land Bank and which loan is the basis for the contention arising in this cause.

On or about May 12, 1915 there was conveyed to Dr. R. A. Burke, who will be designated hereinafter as "Dr. Burke", the tract of land here involved consisting of approximately 176 acres located in Dyer County, Tennessee. The consideration, or at least a part of said consideration recited in said deed, was the assumption by Dr. Burke of the payment of a debt of approximately $4000.00 due the Prudential Insurance Company of America and evidenced by a deed of trust on said property. Also the assumption of a debt due E. T. Weakley of approximately $1960.00 and due March 4, 1916.

Dr. Burke owned this land at the time of his death, and in 1931 had procured a loan from the Federal Land Bank of Louisville in the amount of $4700.00, the note being executed by both Dr. Burke and his wife, Mrs. Nannie G. (R. A.) Burke, who will be designated hereinafter as "Mrs. Burke", payment of which was secured by a deed of trust on said tract of land of 176 acres, which is fully described in the pleadings. This loan is what is referred to as an amortized loan requiring semi-annual payments for approximately 20 years.

On January 13, 1933, Dr. Burke executed a will, and by that will he left all of his personal property to his said widow, Mrs. Nannie G. Burke. He also gave her a life estate in all of his real property, which included this 176 acres of land. There were no children of Dr. or Mrs. Burke and in his will he provided for a distribution of this real estate, on her death, to the heirs, his brothers and sisters or their heirs. That will has been construed by a decree of the Chancery Court of Dyer County and also by a prior decree of this Court in this cause. Dr. Burke died in 1934, his will being probated on May 9, 1934. In that will Mrs. Burke is named as executrix and without bond. She administered his estate.

The Federal Land Bank of Louisville did not file any claim in the Probate Court of Dyer County with respect to the amount due on said note, and Mrs. Burke elected to continue the semi-annual payments on said note until it had been paid in full. She appears to be a joint maker of said note with her said husband and she has joined in the deed of trust with her said husband securing the payment of said note.

After the death of Dr. Burke, which fact was made known to the Federal Land Bank of Louisville, the holder of said note, correspondence was had between the bank and the Secretary-Treasurer of the Dyer County Farm Loan Association with respect to procuring an assumption of payment thereof from the heirs of said Dr. Burke. At that time the heirs were numerous. His will had not been construed by the Courts, and suffice it to say that there was no assumption agreement executed by his devisees, legatees or heirs.

The Federal Land Bank was informed that Mrs. R. A. Burke was the sole devisee under the will of said Dr. Burke of a life estate of all his real property, and that the estate was perfectly solvent, and the bank then requested that she execute the assumption agreement for payment of this loan. She refused to do that upon the theory that that would make her personal estate liable for the payment of said loan, and the bank knowing from information furnished to it by appraisers, the Secretary-Treasurer, from correspondence that has been filed and made a part of this record by stipulation, that the debt was well secured, and which clearly indicates that Mrs. Burke was at that time electing to pay the note as installment payments matured, the Bank filed no claim in the Probate Court in the administration of Dr. Burke's estate with respect to said note and continued to carry it without any assumption agreement and Mrs. Burke continued to make these semi-annual payments until the entire principal in the said amount of $4112.50, together with the accumulating interest thereon from the time of Dr. Burke's death to the date of the payment of said note was paid by Mrs. Burke. The final payment thereon was made about July 20, 1950, and the Federal Land Bank of Louisville released said lien of record in Dyer County, all of which appears in the stipulation of the parties and exhibits of the cancelled note, deed of trust and proper release of the trust lien.

The record does not show when Mrs. Burke's will was made, but it does show she died testate in Dyer County on March 22, 1957, and that the petitioners in this case, Robena Carthel Cole and Annie Laurie Parker Smitheal, were appointed her executrices and are in the process of administering her estate, the will having been probated

on or about March 30, 1957, in the Common Law and Chancery Court of Dyer County, Tennessee, and on which date they were appointed as such executrices.

In the construction of the will of Dr. Burke the opinion of this Court construing same, is published in 47 Tenn. App. 194 and 337 S. W. (2d) 456, to which reference is here made. Judgment was entered in accord therewith, and procedendo issued in due course remanding the cause to Dyer County Common Law and Chancery Court for the purpose of distribution of said fund, and the intervening petition was filed herein after the opinion and decree of this Court construing the will became final. Decree of said Dyer County Common Law and Chancery Court was entered in accord with the procedendo from this Court on the remand.

There are certain provisions in Dr. Burke's will, copy of which is made a part of the record in this cause, which we desire to refer to, as follows:

"ITEM 1:—I desire that my Executrix pay all of my just debts, including funeral expenses, as soon after my death as practicable.

"ITEM 2:—I hereby bequeath to my wife, Nannie G. Burke, all of my personal property of every kind and description, absolutely."

By Item 3 he devised all of his real estate, said to include lands, business houses, lots etc., wherever it might be situated, to his widow, "Nannie G. Burke" during her lifetime and after her death the real estate to be equally divided between his brothers and sisters and the children of any deceased brothers and sisters per stirpes.

By Item 4 he nominated Mrs. Burke Executrix without bond.

The record reveals the fact that the personal estate of Dr. Burke consisting of stocks, bonds, cash, automobile, jewelry, notes of Dr. Burke amounted to $26,858.33, and in the report of inheritance tax, statement of which is made a part of this record by stipulation, is shown a deduction therefrom of $3995.00 "Deduction Mortgage". That left $22,858.33 subject to the cost of administration and the inheritance tax report shows "Taxes, funeral expense, administration, executors and attorneys fees" $3358.00, which deducted from the $22,858.33, left Mrs. Burke with $19,500.33 net value of personal property, most of which shown by said report to be in stocks, bonds and cash.

The contention expressed is that Mrs. Burke having paid this Federal Land Bank loan from the personal estate devised to her by the will, that her executrices are entitled now to be substituted to her rights, and have the funds representing the sale of said real estate, charged for the benefit of her estate, with this $4112.50 before distribution in accord with decree heretofore rendered by this Court and by the Common Law and Chancery Court of Dyer County on procedendo hereinbefore mentioned.

In the memorandum opinion of the learned Trial Judge of said Common Law and Chancery Court he specifically calls attention to the fact that Dr. Burke's will provided for his executor to pay all of his debts, which included the one now in contention at the bar, and then he said:

"* * * The Court might add that the life tenant under said will and the executor were one and the same person and that no claim was filed, no request to clear said lien claim by any remaindermen, vested

or contingent, while Mrs. Burke refused to sign the request of the Land Bank, she voluntarily payed each installment, the last of which accrued a few years prior to her death.

"In the case at bar, by statute, by direction in the will, and by the voluntary act of Mrs. R. A. Burke, the surviving wife, neither her executrix, nor her heirs or devisees are in a legal position to demand 'contribution or restitution' of the funds paid on the installment promissory note payable to the Land Bank."

He accordingly dismissed the petition and taxed the petitioners with the cost.

Appellants have filed three assignments of error as follows:

I

"The lower court erred in finding and holding that 'by statute, by direction in the will, and by the voluntary act of Mrs. R. A. Burke, the surviving wife, neither her executrix, nor her heirs or devisees are in a legal position to demand contribution or restitution of the funds paid on the installment note payable to the Bank."

It is said that this is error for the reason that it was necessary for Mrs. Burke, as life tenant of said property to discharge this encumbrance in order to preserve the estate, and having done so, she was entitled to contribution from the remaindermen (appellees) to the extent of their interest in said encumbered property, and accordingly was subrogated to the rights of the encumbrancer.

## II

"The lower court erred in finding and holding that Mrs. Burke, as executrix of the will of her husband, Dr. Robert A. Burke, was under a duty to pay said mortgage indebtedness from said estate even though no claim therefor was made nor suit filed against said estate."

It is contended that this is error for the reason that where mortgagee fails to file claim against the estate or bring suit upon his note within time allowed, the payment of such indebtedness out of assets of estate is barred.

## III

"The lower court erred in finding and holding that Mrs. Burke voluntarily paid all the installments upon said lien indebtedness."

It is said by counsel for intervenors that this was error because the record shows that Mrs. Burke refused to comply with the Federal Land Bank's request to assume personally the payment of said note and obligation created by said note and trust deed and therefore she did not voluntarily pay it.

Appellants further contended in this assignment that Mrs. Burke was an accommodation endorser and having paid the note she did not become a volunteer in making the payments from her personal funds. It is the contention of respondents that the will requested Mrs. Burke to make payment of this and all other debts; that she voluntarily did so, and that neither she nor her executrices can now legally question her action.

The first thing that appears to us is the fact that Mrs. Burke acceded to the administration of the estate as

provided by the will and made no dissent from that will, which she had a right to do. It appeared that she acted wisely in making no dissent, but she had that right had she so desired.

There is no dispute about the liability of Dr. Burke's estate for the payment of the debt here involved. The record is clear that at the time the 176 acres here involved was purchased by Dr. Burke, he assumed payment of certain loans, evidently long term loans, one of which was to the Prudential Life Insurance Company of America. Later the record is clear that a loan was made to Dr. Burke by the Mercantile Bank & Trust Company, and that later he applied for the particular loan here in question to the Federal Land Bank of Louisville through the National Farm Loan Association of Dyer County. It is clear that the proceeds of that loan was received by him and that with the proceeds the note and deed of trust securing the Mercantile Bank & Trust Company, was paid and lien satisfied as directed by the Federal Land Bank of Louisville and reported by the Association to the Federal Land Bank.

We are also mindful of T. C. A. Section 30-508 providing under the heading, ''Debtor's property all assets'' ''Every debtor's property, except such as may be specially exempt by law, is assets for the satisfaction of all his just debts.''

Had Mrs. Burke been given discretion to sell the real estate with which to pay his debts she could have done so, but fortunately or unfortunately, Dr. Burke did not so direct her by the will. There is nothing in the will that would authorize her to sell any of the real estate and except in case of insolvency she should not have

done so. There is express provisions or directions, however, in the will that she pay the debts. Therefore, attention is next attracted to Section 30-603 T. C. A. which provides as follows:

"Where an executor not authorized by will to sell and convey real estate, or an administrator, has exhausted the personal estate of the deceased in the payment of his debts, leaving just debts or demands against him unpaid, or paid by the representative out of his own means, and the deceased died seized and possessed of real estate, the chancery, circuit, probate or county court of the county where the same or a portion of it lies, may, on the petition of the personal representative, or any bona fide creditor whose debt remains unpaid, decree the sale of such lands, or of such portions thereof as may prove least injurious to the heirs and legal representatives, and as may be sufficient to satisfy the debts or demands set forth in the bill or petition, and shown to exist."

That Section is further regulated by T. C. A. Section 30-604 which expressly provides as follows:

"Before making such decree, it shall be made to appear to the satisfaction of the court that the personal estate has been exhausted in the payment of bona fide debts, and that the debts or demands for which the sale is sought are justly due and owing either to creditors or to the personal representative for advances out of his own means to pay just demands against the estate."

Section 30-620 T. C. A. provides as follows:

"Where real property has been subjected to the payment of decedent's debts, and assets, which

should have been applied thereon, are afterwards discovered, or, for any reason personal property of decedent, which should have been so applied, afterwards comes to the hands of the personal representative, legatee or next of kin, the heir, devisee, or other person aggrieved, may maintain an action to procure reimbursement therefrom.''

It is observed that Dr. Burke having died in 1934 and his will having been probated in May 1934, and Mrs. Burke having entered into the administration of said estate as executrix without bond, the administration of said estate was not under the Acts of 1939, c. 175, but was regulated by the Acts previously in force. The above referred to Section T. C. A. 30-603 is identical with Section 8213 of the Code of Tennessee 1932, and derived from Chapter 54 of the Acts of 1827, Chapter 22 of the Acts of 1831, and which Act as set out above, had never been amended at the time Dr. Burke's estate was being administered.

T. C. A. Section 30-604 above quoted is identical with Section 8214 of the Code of Tennessee 1932 and came into existence from the Acts above referred to.

T. C. A. Section 30-620 above quoted is identical with Section 8211 of the Code of Tennessee 1932, that was derived from Public Acts passed long prior to the death of Dr. Burke.

The law under which Mrs. Burke accepted and entered upon her duties as executrix of the estate of Dr. Burke required her to advertise within two months after she had qualified in some newspaper in the County calling attention to the administration and directing all persons to bring to her the accounts and demands against said

estate. Section 8194 Code 1932, Acts 1789, Chapter 23, Section 5. She had six months from the date of her qualification to determine the solvency of said estate, and no suit could be brought against her during that period of time. There are many other sections of the Code of 1932 which were amended or modified by the administration acts of 1939 which governed her activities as such executrix.

 Clerks of the Courts wherein the administration of the estate was had were required to take and state an account 18 months after the beginning of the administration of the estate, and continue to take annual accounts of such each year until the estate was finally administered. Nothing appears in this record to show what the final account taken by the Clerk of the administration of the estate under Mrs. Burke as executrix contained. In the absence of such showing it is presumed that the law was followed and that final accounts were taken and stated in accord with the law in force and governing her administration. Exhibit 24 is a copy of her report to the State of Tennessee of the value of said estate for inheritance tax purposes, and we have referred to it on page 81 of this opinion, but there is no date shown any where in the record when that report was made. So we must assume it was made within a reasonable time after her appointment as executrix.

We have said that deductions were taken in that report for $3995.00 for a ''mortgage'', and it is assumed that the Federal Land Bank debt secured by the deed of trust hereinbefore mentioned is that item.

We have referred to the communication between the Federal Land Bank and the Secretary-Treasurer of the

Dyer County National Farm Loan Association with regard to an assumption agreement of this loan, after the death of Dr. Burke. The last information shown by this record, indicating the attitude of Mrs. Burke with respect to this loan, is by a letter dated October 11, 1938, written to the Federal Land Bank of Louisville, Louisville, Kentucky, by R. C. Whitnell, Jr., Secretary-Treasurer of Dyer County National Farm Loan Association, giving the holder of said note the following information:

"We have again contacted Mrs. R. A. Burke, who holds a life interest in this property, but she does not want to sign the assumption agreement. Mrs. Burke owns property in her own right and does not want this loan charged against her estate in case of her death, as she only holds a life interest in this property. We trust it will be satisfactory with the Bank to carry this loan as it now stands."

This information indicates that Mrs. Burke's attitude was such that in event of her death with this loan or any part thereof outstanding, she did not want it charged to her estate so as to be collected from "property in her own right" which she owned and which indicates to this Court that she meant property which she owned other than that devised to her by her deceased husband.

It is shown by this record that Mrs. Burke was the beneficiary of the fruits of the soil of this 176 acres of land as long as she lived. She made no protest with respect to the payment of said debt, unless the explanation above quoted could be said to be a protest, which we do not so consider, and particularly is this true since she only lacked from March to July of living seven years after she had made the last payment due on said debt,

and neither before nor after she finished paying the note did she make any effort to be reimbursed.

■ Debts of the testator are to be paid from the personal property, unless there is some specific provisions in his will otherwise. We are not dealing with a deed of trust placed upon property after the execution of a will. The deed of trust was executed in 1931 and the will was made in 1933. In some cases it has been said that the subsequent mortgage of a portion of the estate devised has operated as a revocation of the devise pro tanto as much so as if the property had been conveyed. It is said by Mr. Pritchard, however, that:

"* * * But this is to be doubted, or at least understood with the qualification that the absence of a clear intention to the contrary, the devisee is entitled to have the estate disencumbered from the mortgage, whether subsequent on prior to the making of the will, out of the personal estate of the testator not specifically bequeathed. The debt charged upon the realty by the mortgage is the debt of the testator, not that of the devisee, and is primarily payable out of the personal assets." Phillips Pritchard on Wills, Vol. 1 Sec. 306, pp. 296, 297.

Neither are we dealing with the case such as is reported and styled: Commerce Union Bank v. Weis, 27 Tenn. App. 433, 181 S. W. (2d) 764, 765. In that case George F. Weis and his wife had bought some real estate in Nashville. The deed was made to the wife. The consideration was $5750.00. They both had executed the deed of trust to secure some $5100.00. Payment on the notes were made from a joint bank account in the name of both husband and wife and that opinion recites that

they both work and that each had contributed about the same amount to said account from which this debt was being paid. At the time of his death there was left unpaid $4575.67 balance due on that note. In the opinion by Judge Hickerson of this Court, after reviewing the equities, it was determined that the note was a joint obligation and that equity required that one-half of it be paid from the funds of the estate of the deceased husband and one-half from that of the wife. Like as in the present case no claim was filed, and the Court said:

"The insurance company, which holds the note that is secured by this deed of trust, declined to file a claim in the County Court against the estate of George F. Weis, being satisfied, evidently, to look only to Mai E. Weis and the security of its deed of trust for the payment of its note. More than one year has expired since the notice to creditors was given, so the claim on the note is barred in so far as the estate of George F. Weis is concerned. Bonham v. Bonham, [180] Tenn. [p. 364], 175 S. W. (2d) 328."

That case was before this Court in 1944 and was administered under the Act of 1939. In that case the Commerce Union Bank was executor of the will of George F. Weis, and while the case was in the process of administration the executor filed a bill in the Chancery Court, having been unable to reach an agreement with respect to her liability thereon, seeking instructions relative to the duty of the executor. The Court commented on the fact of prior decisions where the title to the property was vested in the husband and wife and the estate by the entirety, and in that connection said:

"* * * That fact would be more unfavorable to the wife's contention, that the husband is primarily liable on this note, than the facts of the instant case. If the mortgaged land were held by husband and wife as tenants by the entirety the husband would own the land if his wife should predecease him. Here the title was in the wife and the husband had no interest therein, except a possible curtesy interest."

The Chancellor had held that the husband's estate was liable for the entire debt. This Court reversed, saying:

"We do not think the record supports this conclusion which the Chancellor reached. It is our opinion, and we hold, that George F. Weis and Mai E. Weis were comakers and joint obligors on the note in controversy and as such they were equally liable for the payment of the same. In effect, the note was for purchase money, executed by husband and wife, to pay for land the title to which was placed in the wife."

Since the balance on this note was outstanding and the insurance company had been barred by virtue of its failure to file a claim, the Court held that the widow was entitled to file the action she did upon a cross bill to that of the executor.

In that case the Court further answered the question:

"Is the executor entitled to be suborgated to the rights of the holder of this note when it pays one-half the note? We think not. There is nothing in the record to even indicate that the husband and wife intended that the lien on the real estate should be the

primary source from which this note should be paid. It was simply a note given for borrowed money signed by the husband and wife; and the deed of trust was given to secure the note, for the benefit of the party making the loan.''

That appears to be the status of the holder of the note in question in the instant case.

The Court then commented upon the maxim or rule that: ''In a Court of Chancery equality is Equity'', and said:

''Since the title to the mortgaged real estate is in Mai E. Weis, if the executor upon payment of one-half of the note should be subrogated to the rights of the holder of the note, the effect would be that the wife would be compelled to pay the entire note. That would not be equality. She should pay one-half of it and her husband's estate should pay one-half of it.''

That rule had no application in the instant case. The will specifically directed the wife, who was the executrix, to pay all of the debts of the testator and that was the first item of business that she had to transact. The second item then gives to her his personal property, and there is nothing in this record to indicate that any part of that personal property which was given to his wife was used in the retirement of this debt. So Mrs. Burke elected to take under that will, and to take all of the personal property and she only paid the cost of administration, burial expense etc. as revealed by this record. She then used the land that had been given as security to the creditor by her husband and voluntarily paid that debt through a period of years. If there could be any

subrogation then one would have to, in applying the rule in the case of Commerce Union Bank v. Weis, go into a calculation to determine what the life estate in the encumbered real estate devised to Mrs. Burke for life was worth and then make some division of this debt upon the application of some portion of this debt to be paid by Dr. Burke's estate.

Counsel for petitioners insist that the fact that Mrs. Burke was appointed executrix of Dr. Burke's will and that no claim was filed against the estate by the holder of the note nor by her, did not obligate her to pay said note from the personal estate of the testator husband. He cites for authority on that statement Bonham v. Bonham, 180 Tenn. 364, 175 S. W. (2d) 328, and Commerce Union Bank v. Weis, supra. We have carefully read each one of these opinions, and have made much reference to the Weis case, but we find nothing whatever in the Bonham case to support the contention so made by counsel for petitioners. Bonham v. Bonham, supra and the Commerce Unon Bank v. Weis case supra, were both governed by the Administration Act of 1939. While both cases are being administered in accord with testamentary dispositions, neither of them have shown similar provisions to the one now under consideration.

We think the real question in the instant case is simply this: Where the testator directs that his debts be paid by the executrix, whom he names his wife, and to whom he gives all of the personal property that he had, with the proof abundantly shown the personal estate was worth three or four times more than the cost of administration and debts, including the one here under contest, it was his intention that she should pay the debts from

his personal property which came into her hands as such executrix and take the remainder of the personal property as her absolute property, and more particularly is this true where the debt was created as an obligation of the testator prior to the execution of his will, and had he wanted it done otherwise, he could have so provided.

It is the general rule at common law and in equity, and we know nothing contained in the statutes to the contrary, that debts shall be primarily paid out of the personal estate of a decedent, and that the real estate shall only be subjected as auxiliary to the personalty. Furthermore, in this State we are satisfied that proper construction of all of our statutes relating to such matters, some of which are quoted in this opinion, both to personalty and real estate, of an intestate or testate decedent in the absence of specific instructions in the will to the contrary, are assets for the payment of debts, but that these particular statutes have not changed the general rule. O'Conner v. O'Conner, 88 Tenn. 76, 77, 12 S. W. 447, 7 L. R. A. 33; Whitmore & Kendall v. Rascoe, 112 Tenn. 621, 85 S. W. 860; American Surety Company v. Grace, 151 Tenn. 575, 271 S. W. 739; Mabry v. Mabry, 5 Tenn. App. 307.

Some of these cases referred to are cases where there was a deceased intestate, however, in Hennegar v. Deadrick, Tenn. Ch. App. 1899, 54 S. W. 138, it is said:

"The case came on for hearing before Chancellor Kyle, June 26, 1899. He held that Mrs. Deadrick and William V. took the property devised and bequeathed to them in the will absolutely, and without limitation or restriction, and that the executors should divide the personalty equally between them, after paying

all the debts of the testator, including the incumbrance on the M. L. Ross property in Knoxville devised to the wife. * * *

"There was no error in the holding of the chancellor that it was the duty of the executors to pay all the debts of the decedent, including the mortgage debt upon the M. L. Ross property, devised to the wife, and for the reason that they were, by the will, directed to pay all his just debts, and this debt on the Ross property was his debt."

There seems to be no distinction between the rule with respect to states which are devised with specific direction to the executrix or executors to pay the just debts, and the rule applicable in cases of intestate, unless expressly provided by the will.

In O'Conner, Admx. v. O'Conner, supra, 88 Tenn. 76, 12 S. W. 447, there was a contest between the widow and the heirs at law of an intestate. This case is cited in 112 Tenn. pages 621, 630, 85 S. W. 860 and in quotations from Judge Lurton delivering the opinion, on page 630, on page 862 of 85 S. W., it is said:

" 'It is a general rule of common law and in equity that debts shall be primarily payable out of the personal estate, and that the land shall only be subjected as auxiliary to the personalty. In this state, by statute, both the personalty and the lands of an intestate are assets for the payments of debts, but the latter cannot be subjected until the former is exhausted. These principles are fundamental, and

need no elaboration. When, therefore, a creditor whose debt is secured upon the land elects to go upon the latter, as he may, the heir will be reimbursed out of the personalty. This is the undisputed rule where the debt was the personal debt of the intestate and one originally created by him. In every such case the election of the creditor to enforce his mortgage is not suffered to disappoint the heir, for, the personalty being the primary fund for the payment of such debts, it must reimburse the heir for the loss of the land, the latter being entitled to exoneration.' ''

Now under the first assignment of error we have shown the facts of the case and what seems to be the law applicable thereto. We conclude, therefore, that the first assignment of error must be overruled.

As to the second assignment of error we find nothing that would warrant us in holding that the lower Court was in error when he said that Mrs. Burke was under a duty to pay said mortgage indebtedness from the estate, even though no claim had been filed. The authorities heretofore cited, we think, are fully to the effect that while the debt was primarily that of Dr. Burke, Mrs. Burke signed the note. She signed the deed of trust. She became jointly liable with her husband for the payment of that debt. When the Federal Land Bank refused to file a claim against the estate of her husband and she continued as executrix in the administration of the estate, as shown by this record, she acknowledged that debt to be one in which she was jointly liable. She paid it, and neither she nor those who represent her, under the circumstances of this case, can now say that they

are entitled to subrogation or restitution from the sale of this entailed property devised to the brothers and sisters and their heirs by Dr. Burke.

Likewise as to assignment No. 3 that the Court erred in finding that Mrs. Burke voluntarily paid the installment on the debt, we find no reason to say that the Court was incorrect in that holding. On the contrary we think he was correct.

We think the lower Court was eminently correct when he said:

"In the case at bar, by statute, by direction in the will, and by the voluntary act of Mrs. Burke, the surviving wife, neither her executrix, nor her heirs or devisees are in a legal position to demand 'contribution or restitution' of the funds paid on the installment promissory note payable to the Land Bank."

■ It might be further observed that Mrs. Burke's will is no where found in this record, and we assume there is certainly no direction contained in that will with respect to the fact that she paid this debt and expected restitution to her devisees from the sale of the lands which had been devised by her deceased husband. Furthermore, we think the time that elapsed from the death of the husband, Dr. Burke, to the date of the death of Mrs. Burke, about 23 years, and seven years of that time having elapsed after Mrs. Burke paid the last payment due on said debt, and nothing in this record to show any action on the part of any of the heirs or devisees of Mrs. Burke in an effort to have a determination of the matter during all of these years, presents a case of laches, even if they ever had such a right, which would

prevent them from asserting it at this late date. Certainly her devisees, legatees nor heirs can stand on any higher legal basis than she.

The result is that all of assignments of error are overruled, the judgment of the lower Court affirmed at the cost of the appellants and their sureties on the cost bond. The case will be remanded to the Common Law and Chancery Court of Dyer County, there to be fully and finally administered under the orders and decrees of that Court. Decree of this Court will be entered in accord with this opinion.

Carney and Bejach, JJ., concur.