MARTIN and others *v.* OSBORNE and others.

(*Nashville.*   February 10th, 1887.)

1. WILL. *Construction.* *Devise of a lot, with the personal property thereon, passes live stock.*

A devise of a certain described house and lot, "together with *all the personal property and effects in the house and on the lot, as it* may exist at" testator's death, passes to the devisee all the live stock, consisting of horses, mules, hogs, and cattle, "housed and domiciled" on the lot at testator's death; although they may have been occasionally used or grazed on testator's other adjoining lands.

2. SAME. *Same.* *Demonstrative legacy.*

A bequest of "$10,000 *in such cash, stocks, notes, or bonds,*" as the testator may have at his death, is not a *specific* legacy; and the legatee will not be compelled to accept payment thereof in any of the securities named, but is entitled to payment in *cash*, out of the proceeds of such securities and the residuary fund.

(See Darden *v.* Hatcher, 1 Cold., 513; S. C., 5 Cold., 211; Milly *v.* Harrison, 7 Cold., 191; Ballentine *v.* Wright, 7 Lea, 26.)

---

FROM WILSON.

---

Appeal from Chancery Court of Wilson County. GEORGE E. SEAY, Ch.

A. B. MARTIN for Complainants.

WILLIAMSON & BEARD, JORDAN STOKES & SON, DEMOSS & MALONE, and R. P. McCLAIN, for Respondents.

Martin and others *v.* Osborne and others.

FOLKES, J.   This is a bill filed by Andrew B. Martin, seeking a construction of the will of the Hon. Robert L. Caruthers, deceased.   So much of this will as is necessary to the consideration of the questions presented in this record is as follows:

"In compliance with 'the dying request of my wife, who was greatly instrumental in any success I may have met with in the world; to make ample provision for our niece, who had from infancy filled the vacant place of a daughter to us, and who has, since my sad bereavement more than eleven years ago, managed my household affairs without trouble to me, and whose tenderness and affection for me in sickness and in health has ever been that of a daughter; I give to Mary Cahal the house and lot on which I now live, and which has been my homestead since 1828 [here describing the same by proper boundary], together with *all the personal property and effects in the house and on the lot* as it may exist at my death.   I also give her $10,000 *in such cash, stocks, notes, or bonds* as I may leave.   This, however, is to extinguish a claim she has upon me for the price of her land, received by me from Harry Smith, which, with interest, now amounts to between four and five thousand dollars, and any other claims she may have against me, if any.

"*Second*—I give to W. A. Caruthers my law library."

*Third*—He then directs his executor to sell his other real estate at such time and "on such terms

as he may think best to insure a fair price. To these proceeds is to be added any and all other debts, claims, or effects I may leave not heretofore disposed of, the aggregate fund to be raised under this section to be disposed of as follows:"·

1. To pay all debts and expenses of administration.

2. To the erection of a monument over the grave of a deceased brother.

3. The balance remaining is then to be equally divided between his nephew, W. A. Caruthers, and his niece, Sally Robinson.

The will is dated December 21st, 1881. Judge Caruthers died October 2d, 1882.

The inventory filed by the executor, and the other proof in the cause, show that, at the time of his death, in addition to the usual household effects reasonably expected to be found in the home of a man of testator's culture, high social position, and pecuniary condition, there were upon the lot given to his niece, Mary Cahal, some few farming utensils, a carriage, a wagon, a quantity of hay and other feed in the out-buildings, a lot of fattening and stock hogs, two mules, one mule colt, two horses, and six head of cattle, four of the latter being registered Jerseys.

The defendant, W. A. Caruthers, in his answer, insists that the live stock above enumerated does not pass to Mary Cahal under the will, but that the same goes to him and Sally Robinson under the third clause.

The proof shows that the lot upon which testator resided was a large one, containing near ten acres; that contiguous thereto was a much larger body of land, upon which, at the time of his death, was a small lot of corn ungathered in the field, a quantity of clover hay cut and stacked, some wheat straw, and twenty-five head of grazing cattle. Upon these adjoining lands the workstock, enumerated as being on the home lot, were worked from time to time, as the necessities of his small farming operations might require; and they, together with the two cows and four Jerseys, were occasionally pastured on said adjacent lands, but they were driven up at night and fed and housed on the home lot, where were situated the stable, barn, and cribs. The cows, including the Jerseys, were used for the purposes of milk and butter, were generally grazed on the home lot, and only turned upon the adjoining lands when the condition of the grass on the home place rendered it expedient so to do. It is too manifest to justify argument that the stock, including the Jerseys, thus housed and domiciled on the home place became the property of Mary Cahal under the language, "Together with all the personal property and effects in the house and *on the lot,* as the same may exist at the time of my death," to be found in the first clause.

Defendant W. A. Caruthers' next contention is that under that portion of the will which gives to Mary Cahal "$10,000 in such cash, stocks, notes,

or bonds as I may leave," she may have all the cash on hand in payment of this legacy, but that if the cash on hand is not enough to pay it, she must take such stocks notes, or bonds as were on hand at their face value—that is, dollar for dollar.

It appears that there was on hand at the time of the testator's death only a hundred or two dollars in cash, about twenty-two hundred dollars in good notes, and five hundred and seventy - two shares of stock in the Memphis and Charleston Railroad Company, together with two or three thousand dollars in notes that were reported by the executor as worthless. There were no bonds. The stock was greatly below par, and when sold by the executor realized seven thousand and forty dollars.

Of course the intention of the testator upon this subject, as in every question in the construction of wills, is the principal object to be ascertained; and it is, therefore, necessary that the intention be either expressed in reference to the thing bequeathed, or otherwise clearly appear from the will, to constitute the legacy a specific one, as contended for.

This is not a *specific* legacy, either as to the money or stocks, notes, etc., but is a *general*, or pecuniary legacy, where, if there be a deficiency of assets, the legatee is entitled to recompense or satisfaction out of the estate of the testator. It is what is called in the books "a legacy of quantity, *in the nature* of a specific legacy." It is for so many dollars, with reference to a particular fund for its payment. 1 Roper on Legacies, 192.

Martin and others *v.* Osborne and others.

As is said by the same author: "This is a species of legacy between a general and specific bequest. The testator's intention is its basis. It assumes that the testator meant to give a general legacy, with a charge upon a particular fund for its payment, not intending its existence should depend upon the validity or continuance of such fund; for the terms of the bequest are literally complied with by sale of so much of the stock as is required to answer the legacy." 1 Roper on Legacies, 218.

No one understood these principles better than the author of this will, who, as a distinguished member of this Court, has contributed so much to enrich and adorn the jurisprudence of the State of Tennessee.

So that, looking both to the circumstances and surroundings of the testator, and this object of his bounty, as also to the language of the will itself, we are clearly of opinion that $10,000 in money must be paid by the executor, with interest after one year from death of testator, to Miss Cahal.

The question made by the defendant in his answer, as to the law library, is very properly abandoned at the bar.

The decree of the Chancellor will be affirmed.

The cost of the cause in the court below will be paid by the executor out of the funds in hand; the cost of this Court will be paid by the appellant, W. A. Caruthers.