CASE 94—PETITION EQUITY—MAY 12.

## Hedger, &c., v. Judy, &c.

APPEAL FROM GRANT CIRCUIT COURT.

DEVISE OF LAND WITH LIEN UPON IT.—Where a testator devised land to his two brothers, executors of the will, reciting that it was for the love and affection he had for them and also for their services in settling up the estate, there being a lien on the land, which, if discharged out of the estate, would leave nothing with which to pay legacies, a fact that must have been known to the testator, it necessarily follows that the testator intended the brothers to take the land *cum onere* and to release it from the existing lien with their own means and not by using assets of the estate.

H. CLAY WHITE FOR APPELLANTS.

The debt owing to the estate of J. C. Hedger, deceased, for the purchase money lien on the three hundred acres of land is to be treated as any other debt owing by the testator, and the personal estate of the testator must first be applied to its payment. (Broadwell v. Broadwell, 4 Met., 291; Augustus v. Seabolt, 3 Met., 159; Jackson v. Payne, 2 Met., 567; Allen v. Vanmeter, 1 Met., 277; McCampbell v. McCampbell, 5 Litt., 92; Moore v. Howe, 4 Mon., 221; Petty's Heirs v. Montague, 7 B. M., 55; Moore v. Moore, 12 B. M., 656; Cromie v. L. O. H. Society, 3 Bush, 379; Caldwell v. Kinkead, 1 B. M., 230; Lilly v. Curry, 6 Bush, 592; Alexander v. Waller, 6 Bush, 341; Moran v. Dillihay, 8 Bush, 437; Shelly v. Shelly, 1 B. M., 269; Smith v. Lampton, 8 Dana, 71; Lupton, &c., v. Lupton, &c., Johnson's Ch'y Rep., vol. 1 and 2, p. 614; 2 Redfield on Wills, pp. 132, 136, 207, 208, 209.)

COLLINS AND FENLEY ON SAME SIDE.

1. The devisees do not take the land devised, charged with the lien upon it, in the absence of such a charge in the will. The lien debt stands upon the same footing as any other debt due by the testator.

As to rules for construction of wills, see Jackson v. Payne's Ex'ors, 2 Met., 570; Augustus, &c., v. Seabolt, &c., 3 Met., 159; Cromie's Heirs v. Louisville Orphans' Home Society, 3 Bush; Caldwell's Ex'ors v. Kinkead, &c., 1 B. M., 229.

2. Clause 1 creates a special devise to appellants, for it devises the thing itself, the three hundred acres of land. (Broadwell v. Broadwell, 4 Met., 291; Smith v. Lampton, 8 Dana, 71; Redfield on Wills, chap. 7, p. 132; Williams on Ex'ors, vol. 2, p. 992.)

Hedger, &c., v. Judy, &c.

But the devises to Reuben Hedger, John A. Judy and Margaret Judy and the residuary devise to Reuben Hedger are each and all general legacies. (Redfield on Wills, secs. 6, 7 and 8, pp. 135–6.)

3. The specific devise of the three hundred acres can not be made to contribute to make up an unexpected deficiency which may arise in regard to other devises, nor can specific devises have any deficiency made up to them. (Redfield on Wills, sec. 9, p. 136; Davenport v. Seargeon, 61 N. H., 25 Am. Law Reg., 480; Emery v. Bachelor, 78 Maine, 25 Am. Law Reg., 680; Gen. Stats., chap. 39, art. 2, sec. 19; Mc-Camble v. McCamble, 5 Litt., 92; Alexander v. Waller, 6 Bush, 341.)

4. The statute provides how the debts are to be paid in the absence of directions in the will. But here the will specifically declares out of what property the debts are to be paid and must control. The will not only declares that the debts shall be paid by a sale of the land and the personal estate, but as distinctly declares that the devise to the appellees and the residuary devise to Reuben Hedger shall also be paid out of the same fund.

W. W. DICKERSON and JAMES T. WILLIS for appellee.

The court must presume that the testator knew with reasonable certainty the amount of his assets and liabilities and therefore must hold that it was his intention to make the lien debt a charge upon the land devised to the executors, as to hold otherwise would be to ascribe to him a nugatory act in making the legacies to his infant son, his sister and nephew. (Cameron v. Boyd, 4 Dana, 550; 2 Redfield on Wills, pp. 207, 208, 209.)

JUDGE LEWIS delivered the opinion of the court.

Sandford Hedger, by will dated July 16, 1884, and probated August 11, 1884, devised to his brothers, *John-ethan* and James Hedger, his farm, containing about three hundred acres of land, also jointly with his sister, Margaret Judy, all household and kitchen furniture; to Margaret Judy, $1,000; to his nephew, John Judy, $1,000; to Reuben Hedger, an illegitimate child, then an infant, $1,000, to be paid to him upon becoming twenty-four years of age. Also, in language of the testator, " all of the remainder of my estate that may be left after the payment of my funeral expenses, expense of settlement of my estate and all of my debts and the devise to Reuben

Hedger, John Judy and Margaret Judy to be paid to him as provided in the third clause of this will; and my executors are directed and requested to expend $500 in educating my son, Reuben Hedger." But it is in the same clause provided that if he should die before the age of twenty-four, leaving no lawful child surviving him, all the money devised to go to *Johnethan* and James Hedger.

*Johnethan* and James Hedger were appointed executors of the will and directed to have testator's estate settled up within six years.

But February 11, 1891, John Judy brought this action against James Hedger, surviving executor, *Johnethan* Hedger having died in 1885, for settlement of the estate, none having been made, though more than six years had elasped since they qualified as executors, and to recover amount devised to him, no part of which, nor of devises to Reuben Hedger and Margaret Judy, had then been paid.

The special commissioner to whom the case was referred for auditing and settling the accounts and transactions of the surviving executor, reported he had paid debts in excess of assets of the estate, the sum of about $574. And as a consequence there was left in his hands no means with which to pay any part of the legacies. But by the judgment appealed from by the executor exceptions to the commissioner's report were sustained and credits allowed thereby to the executor were rejected to an aggregate amount sufficient to satisfy the legacies and leave a residuum for Reuben Hedger.

The first of those exceptions is to a credit of $283.95 allowed the executor on account of a personal judgment

in favor of one Hartfield against *Johnethan* Hedger, which James Hedger alleges he paid as executor upon proof, not at all sufficient to show the estate of Sanford Hedger was liable therefor.

The second is to a credit of $1,312, being one third of a judgment rendered in an action to settle the estate of Jacob C. Hedger in favor of legatees against James Hedger, surviving executor of his will, *Johnethan* and Sanford Hedger, the other executors, being then dead. The judgment was rendered in 1888 for amount of the estate of Jacob C. Hedger, found in the hands of James Hedger four years after death of Sanford Hedger. And without competent evidence showing, satisfactorily, Sanford Hedger had, prior to his death, received as executor any part of the estate of his deceased father not accounted for, or was at time of his death in default in any respect, the special commissioner in this case allowed to James Hedger credit for one-third of that judgment, though it was rendered against him alone. But the lower court rejected the claim only to the extent of $749.67, and as there is no cross-appeal, that ruling will have to stand.

The third exception involves construction of the will, particularly clause 1, as follows : " I give and devise to my brothers, Johnethan Hedger and James Hedger, my farm upon which I now reside, containing about three hundred acres of land, being the same tract purchased by me from my father, Jacob C. Hedger, deceased. And this devise is made to them for the love and affection I have to them and for their services in settling up my estate. And they, upon accepting the devise, are to make no charge for their services as my

executors for settling my estate, and no allowance is to be made to them by the court therefor."

At date of the will and death of the testator there was unpaid purchase money, for which a lien on the land devised existed, to the amount of about $4,001. And the question presented for determination is whether the testator intended the devisees, *Johnethan* and James Hedger, to pay that sum out of their own means, or with assets of his estate.

The testator in clause 7 authorized his executors to sell all his lands, except the tract devised to them, to pay his debts, permitting them, however, to retain one of the tracts designated at the price of $1,400, which they did do. He also directed his personal property sold, proceeds of which were evidently intended to pay debts and legacies. And nothing to the contrary appearing a reasonable inference would be that the amount of unpaid purchase price of the land devised to them was regarded by him as one of his debts intended to be thus paid. But it seems to us, looking to the general tenor and purpose of the will, and giving effect to each part so as to make the whole instrument consistent and reasonable, the conclusion necessarily follows that he intended his two brothers, *Johnethan* and James Hedger, to take the farm devised to them *cum onere* and to release it from the existing lien with their own means and not by using assets of the estate.

The estate left by him was not so large, precarious or complicated as to make it at all difficult for him to ascertain and fix approximately its value after deducting amount of indebtedness, which was also easily estimated. And that he was well acquainted with character, condition and

value of his estate and each part of it is shown by the intelligent, careful and precise manner in which he disposed of it, the will containing thirteen clauses relating to different subjects, each one of which was considered minutely and methodically. Then knowing, as we are satisfied the testator did, that to charge his estate with payment of the •balance of purchase money of the farm would result in gift of his whole estate, about $8,000 in value, to his two brothers, *Johnethan* and James Hedger, and render nugatory all provisions for the other three devisees, it is unreasonable to suppose he intended to so charge it. It is made apparent from the will, he had strong affection for his illegitimate son, Reuben, who, at date of it, was only about six years old, and was extremely solicitous for his welfare. For, as stated in the will, he had taken the child to his own home to raise and educate, and, in anticipation of his own death, not only gave him $1,000, and the residuum of his estate, but directed $500 to be used by the executors in educating him, and appointed one of them his guardian to care for and protect him.

To say that notwithstanding the anxious desire thus shown for the welfare and support of his helpless child, he expected and intended all provisions of his will in regard to him to become nugatory, would be unreasonable. In our opinion the testator intended each clause of his will to take effect and be carried out, and therefore did not desire or expect his estate to be charged with payment of any part of the purchase money of said farm, which would inevitably result in defeating that intention and depriving three of the devisees of their legacies.

Judgment affirmed.