WILL OF BLOMDAHL: FIRST CHURCH OF CHRIST SCIENTIST, OF MILWAUKEE, and another, Appellants, vs. ERLANDSON, Executrix, and another, Respondents.

*October 10, 1934—January 8, 1935.*

For the appellant First Church of Christ Scientist, there was a brief by *George E. Ballhorn,* attorney, and *George H. Katz* of counsel, both of Milwaukee, and oral argument by *Mr. Ballhorn.*

For the appellant Fred T. Woodford there was a brief by *Lines, Spooner & Quarles,* attorneys, and *Chas. B. Quarles* of counsel, and oral argument by *James T. Guy,* all of Milwaukee.

For the respondent Signe Erlandson, executrix, there was a brief by *Kaumheimer & Kaumheimer,* attorneys, and *Gifford Alt* of counsel, all of Milwaukee, and oral argument by *Mr. Alt.*

For the respondent Royal Consul of Sweden there was a brief by *Rix, Barney & Kuelthau,* attorneys, *Gordon I. Hansen,* guardian *ad litem,* and *G. Carl Kuelthau* of counsel, all of Milwaukee, and oral argument by *Mr. G. Carl Kuelthau* and *Mr. Hansen.*

The following opinion was filed November 6, 1934:

FAIRCHILD, J.   To give full force to a last will and testament and prevent the making of a new will for the testatrix by a court, rules based on human experience and sanctioned by human wisdom have been adopted to aid in an interpretation of ·a will when its meaning is called in question. The most familiar of these rules are applicable in this case: (a) The words of the will are to be construed to give effect to the intention of the testator.   (b) The intent must be drawn from the will.   (c) When the language of the testatrix is plain and unambiguous, that language controls and there is no room for judicial construction.

In support of the ruling of the court below that the bequest of stock to Woodford and to the church are specific, respondent urges the fact that at the time of the execution of the will the testatrix owned enough stock to satisfy the demands of the bequests, and that at the time of her death she did not own such stock.   Bequests in this form, imposing upon the executor the duty of purchasing the stock or giving the value thereof in cash to the legatee in order to comply with the intent of the will, are not strange in testamentary matters. Such a bequest is a general legacy unless the testatrix, by, some qualifying words, expressly indicates a different intention and a purpose to have it a specific legacy.   Under the law of this state, the circumstance of the ownership of the stock at the time of execution is not material in determining this question in the absence of the necessary qualifying words creating a specific gift.   A general legacy is one which may be satisfied out of the estate generally by delivering any part

of the estate and which is not charged upon any specific property. As said in the *Will of Weed,* 213 Wis. 574, 252 N. W. 294:

"The characteristic of a general legacy is that it does not attempt to dispose of any specific article or to charge the gift upon any specific article."

The language used by the testatrix in framing her bequest, when read by itself, clearly carries a presumption that she intended, upon her death, to provide the named legatees each with one hundred shares of the Ohio Oil Company common stock. If that language in the will is read in connection with the fact that she owned, at the time of the execution of the will, two hundred shares of that stock, it might reasonably give rise to the presumption that she was giving away the stock then in her possession. But will such a presumption, if acted upon, carry out the intention of the testatrix? In order to avoid the problematical as far as possible, and as an aid to the rules of law which now apply to the interpretation and construction of wills, we hold that words specifically identifying the property and indicative of possession are necessary in the making of a specific bequest. This general rule is stated as follows:

"A gift of a certain number of shares of stock, bonds, and the like, described by the corporation, obligator, and the like or by value or quantity, but not indicating any specific lot of such securities, is a general legacy; even if testator owned the exact number of such securities. . . ." 2 Page, Wills, p. 2045, § 1229.

"Legacies are either *general* or *specific.* A general legacy is one which does not necessitate delivering any particular thing or paying money out of any particular portion of the estate. But a specific legacy is the converse of this; or where a particular thing must be delivered, according to the terms of the bequest, or money paid out of some particular portion of the estate.

"Thus, if a testator bequeaths to A. a horse or a gold ring, this indefinite expression constitutes a general legacy; for we

may infer that the executor is left free to procure something which shall answer that description out of the funds in his hands, provided none be left at the testator's decease. But, if the bequest is expressed, 'my roan horse,' 'the gold ring which C. D. gave me,' or (with reference, not to a present possession, but possession at the time of one's decease) 'whatever horses shall be in my stable,' or 'all the books which may be in my library,' or 'all the furniture which shall be contained in my dwelling-house,' this legacy is a specific one. Or, to proceed with the distinction, should a testator bequeath $10,000 in the public funds, or $10,000 in first-class railroad bonds, or simply $10,000, the legacy would be general; while, on the other hand, the bequest of $10,000, 'of my stocks in the public funds,' or 'of my railroad bonds,' answering such a description, or of '$10,000 out of my savings-bank deposit in B.,' it will be held specific." 4 Schouler, Wills (6th ed.), § 3057.

It is a generally accepted rule that where the language of the will is clear and unambiguous it must control and that rule must prevail in this instance. The gift of a certain number of shares of stock without words of identification and possession is a general legacy. The absence of such words in these particular bequests brings this will within the rule accepted by this court and they must be held to be general bequests. *In re King,* 122 App. Div. 354, 106 N. Y. Supp. 1073; *In re Bergen,* 56 Misc. 92, 106 N. Y. Supp. 1038; *In re Liell's Estate,* 139 Misc. 513, 247 N. Y. Supp. 386; *Tifft v. Porter,* 8 N. Y. 521; *Evans v. Hunter,* 86 Iowa, 413, 53 N. W. 277; 28 R. C. L. p. 293; *Will of Hinners, ante,* p. 294, 257 N. W. 148.

*By the Court.*—Order reversed, and cause remanded for further proceedings according to law.

The following memorandum was filed January 8, 1935:

PER CURIAM. Upon an application to modify the mandate heretofore entered, the parties appear to be in accord on

the proposition that under ordinary circumstances the time for the delivery of the stock would have been April 10, 1934. At that time, however, there was a decision of the county court holding that the appellants were not entitled to take the shares of stock mentioned in the second and fourth paragraphs of the will of Selma Blomdahl. Under that decision the executrix could not then deliver the stock. It cannot be held that there was bad faith on the part of the executrix in withholding the delivery until after the questions raised in the proceedings in the county court had been reviewed by this court to which an appeal had been taken by appellants. Sec. 313.13, Stats. There certainly was no conversion and the executrix, in the discharge of her duties, was obliged to await a decision by this court. The question as to whether there was an ademption of the bequest was *bona fide*. It therefore follows that the beneficiaries are entitled to the stock which the testatrix bequeathed them and their title must be said to be established as of April 10, 1934. It must also be said that there was no unlawful withholding of the stock at that time so as to entitle the beneficiaries to elect to take the value thereof with interest from that date. The testatrix bequeathed stock; the beneficiaries were entitled to the bequests when, under the law, the executrix could properly deliver it. The mandate of this court will be complied with when the executrix delivers the stock with dividends declared since April 10, 1934.

A motion to modify the mandate was denied, without costs, on January 8, 1935.