GOFORTH, EXECUTOR, *v.* GOFORTH.

4-6435 154 S. W. 2d 819

Opinion delivered October 20, 1941.

*C. C. Elrod* and *Vol T. Lindsey,* for appellant.

*A. L. Smith* and *John W. Nance,* for appellee.

HOLT, J. J. B. Goforth died February 8, 1938, leaving the following will (formal parts omitted):

"First, I hereby nominate, constitute and appoint my beloved son, Walter Goforth, to be the Executor of this my last will and testament, without bond, directing my said executor to pay all my just debts and funeral expenses as speedily as possible.

"Second, I devise and bequeath to my son, Walter Goforth, all of the farm now belonging to me, known as the Goforth farm north of the center of the Illinois River, and all that part of said farm on the south side of said Illinois River lying upon the west side of the highway running from Siloam Springs through Lake Francis Park to Cincinnati to his use and for his life only and at his death all of said real property I bequeath to Loren Goforth, son of Walter Goforth.

"Third, I bequeath to my beloved son, Walter Goforth, all of my personal property of whatsoever kind and wheresoever situated left by me at my death.

"Fourth, I further bequeath to my beloved son, Pryor Goforth, all of the farm known as the Goforth farm hereinbefore described on the Illinois River lying south of the river and east of the highway to my son, Pryor Goforth.

"Fifth, It is my will and I further bequeath the real property consisting of five acres on South Washington Street where Washington Street joins the highway from Siloam Springs to Lake Francis Park jointly to my sons, Walter Goforth and Pryor Goforth.

"Sixth, It is my will and my executor is authorized to sell and dispose of the five-acre tract on South Mount Olive Street, the property lying on the west side of the highway to Lake Francis Park and divide the proceeds therefrom equally among the following named persons: Hattie Nokes, my daughter; Ruth Nokes, granddaughter; Marie Smith, granddaughter; Raymond McCarty, grandson; Louella Crittenden, granddaughter; Perry McCarty, grandson; Sam McCarty, grandson; and Imogene McCarty, granddaughter, share and share alike.

"Seventh, I further declare and it is my will that in the event any legatee herein shall contest or bring my will into litigation then in that event said legatee shall receive only Five ($5.00) Dollars instead of what they have been bequeathed herein.

"Ninth, It is also my will and I declare that my daughter, Hattie Nokes, and granddaughter, Ruth Nokes, and the other granddaughters and grandsons set out herein shall receive all the proceeds of the property on South Mount Olive Street without any expense to them, and my executor is charged with the duty of paying whatever expenses there is with reference to this property from other sources and no sums shall be deducted from their pro rata share in said property."

Walter Goforth, after having qualified as executor, took charge of the estate and on May 29, 1940, filed his final report. In this report he accounts for personal property belonging to the estate, which he took into possession, amounting to a total of $2,287, and sought credit for a total of $1,056 to cover all debts and expenses of administration of the estate, with the exception of a small attorney's fee which at that time remained unpaid. In this final report appellant also prayed:

"Under the will, all of the personal property of this estate goes to this executor and this executor asks the court to withhold this final order and discharge of the bondsmen until this court ascertains the amount yet to be paid for attorney's fees and commission due this executor and until the said Pryor Goforth is required to pay into this court two-fifths of the amount of money this executor had paid on the debts of the estate, as set out

above, together with two-thirds of the commission allowed this executor and his costs and attorney's fees for the reason the property willed to the said Pryor Goforth amounts to approximately two-fifths of the value of the estate willed to this executor and Pryor Goforth.''

To this final report appellee demurred as follows: ''Comes L. P. Goforth, otherwise known as Pryor Goforth, and demurs to the final report of W. P. Goforth, as executor of the estate of J. B. Goforth, deceased, in so far as by said report, said executor seeks to charge L. P. Goforth with two-fifths of the amount of money said executor has paid on debts of the estate, as set out in said final report, together with two-thirds of the commissions allowed said executor, and his costs, and attorney's fees, and prays the court to dismiss said claim and strike the same from said final report.''

Upon a hearing the trial court sustained the demurrer using this language: ''And the court sustains the specific demurrer for the reason that as the court construes the will, Pryor Goforth is not required to contribute to the payment of debts and expenses of administration, for the reason that the personal property is more than sufficient to pay said debts and expenses, according to the report filed by Pryor Goforth.'' Appellant elected to stand on his final report, which embraced this petition for contribution. Same was dismissed, and this appeal followed.

For reversal, appellant says: ''We contend that the learned chancellor erred in sustaining the demurrer and that this case presents only two questions: First: The construction of the will. Second: Should Pryor Goforth be required to contribute to Walter Goforth for the personal property bequeathed to Walter taken to pay debts of the estate and expenses of administration?''

The rule of this court in the construction of wills is stated in *Union Trust Company* v. *Madigan,* 183 Ark. 158, 35 S. W. 2d 349, where it is said: ''The paramount principle in the construction of wills is that the general intention of the testator, if not in contravention of public policy or some rule of law, shall govern.''

And in *Pearrow* v. *Vaden,* 201 Ark. 1146, 1150, 148 S. W. 2d 320, we said: "The purpose of construction, in any and all cases, is to determine the intention of the testator, and that intention must be derived from the language employed in the will under construction."

The parties here concede that the testator made specific bequests in the second, fourth, fifth, sixth and ninth sections of his will, but they disagree as to the effect of the bequest in the third section, appellant insisting that the bequest made under this section is also a specific one, and appellee that it is general in its effect. It is our view that the contention of appellee must be sustained.

The will directs the executor "to pay all my just debts and funeral expenses as speedily as possible." While there is no direction to pay debts and expenses out of any particular property, the recipient of a specific devise is not required, under the law, to contribute to the payment of these items if there be sufficient personal property undisposed of, in the estate, to pay them. Such contribution could only be required of a devisee where the testator disposed of his entire estate by specific bequests without making any provision for the payment of his debts. The testator here left more than enough personal property with which to pay all debts and expenses of administration.

The rule is well settled that personal property must first be exhausted in the payment of debts and expenses of administration before real estate can be resorted to. In the case of *Mayo* v. *Bank of Marvell,* 188 Ark. 330, 65 S. W. 2d 549, this court said: "This court has many times held that the administrator has no control of his decedent's lands, nor the rents thereof, when not needed for the payment of debts. *Stewart* v. *Smiley,* 46 Ark. 373; *Jones* v. *Jones,* 107 Ark. 402, 155 S. W. 117, and many more recent cases."

In the third section of the will the testator uses this language: "I bequeath to my beloved son, Walter Goforth, all of my personal property of whatsoever kind and wheresoever situated left by me at my death." As we have said this is clearly a general legacy, or devise, and not a specific one, and in effect is the same as if the

testator had used this language, "all the rest and residue of my personal property."

The late Chief Justice HART in the case of *Holcomb, et al.* v. *Mullin,* 167 Ark. 622, 268 S. W. 32, defines a specific legacy in these words: "A specific legacy or devise is a gift by will of a specific article or part of the testator's estate, which is identified and distinguished from all other parts of the same kind, and which may be satisfied only by the delivery of the particular thing. 28 R. C. L. 289, 291; *Kenaday* v. *Sinnott,* 179 U. S. 606, 21 S. Ct. 233, 45 L. Ed. 339."

In 28 R. C. L. 290, the textwriter, on what is required to make a specific legacy, says: "The mere enumeration of property in a residuary clause of a will in general terms does not constitute the legacy or devise a specific one. There must be something in connection with the enumeration of property to show that the testator's intention was to make the devise or legacy a specific one before the courts will so declare it." And on page 297 we find this language: "The general rule is that an enumeration of specific articles in a residuary clause will not make the bequest specific as to such articles unless they are designated in such a way as to differentiate them from the residue. A bequest of all of a man's property is residuary and not a specific legacy, since its import is the same as expressed by the words, 'rest and residue'."

As indicated the testator in the will before us used the language, "all of my personal property," which made the bequest a residuary and not a specific legacy, the import of the words being the same as if he had used "rest and residue."

In *Orr* v. *Griffith, et al.,* 188 Ark. 428, 65 S. W. 2d 556, this court said: "It is conceded by appellant that the construction as to the fifth paragraph of the will is correct, that the bequest there made is a specific one; but it is contended that the construction as to paragraph six is incorrect and that the bequests there made are likewise specific; and that the legatees mentioned in both paragraphs five and six should be required to bear pro rata the cost of administration and to pay pro rata the claims

probated against the estate, in accordance with the rule announced in *Holcomb* v. *Mullin,* 167 Ark. 622, 268 S. W. 32. It will be noticed that the sixth paragraph of the will starts out by saying 'of the balance of my personal property consisting,' enumerating certain stocks, bonds, deposits and insurance. It then continues 'and all other real or personal property of which I may die seized,' etc. This is undoubtedly a residuary clause. The 'residue' of an estate is that which remains after the payment of all costs, debts, and particular legacies.''

Appellant also contends that Pryor Goforth, appellee, should contribute his pro rata share of the debts and expenses of administration, which appellant paid out of the personal property bequeathed to him, under the provisions of §§ 14564 and 14565 of Pope's Digest. We think, however, that these sections can have no application here for the reason, as we have said, the testator left ample personal property to pay all debts and expenses of administration. In fact, he left more than enough personal property for this purpose.

Finding no error the decree is affirmed.

The Chief Justice and Justice SMITH dissent.