ESTATE OF JACK E. SHORT, DECEASED, BETTIE SHORT HAWKINS, EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9058–75. Filed May 19, 1977.

*Herman D. Bradley* and *James C. Burns, Jr.,* for the petitioner.

*Robert B. Nadler,* for the respondent.

FEATHERSTON, *Judge:* Respondent determined a deficiency of $69,208.63[1] in the Federal estate tax due from petitioner. Several issues have been settled and the only one remaining requires classification under Tennessee law of certain legacies in decedent's will in order to determine, first, which of those legacies must abate to pay taxes and debts of decedent, and, ultimately, for purposes of the marital deduction under section 2056,[2] the property interests which pass to the surviving spouse.

### FINDINGS OF FACT

Decedent Jack E. Short died testate on September 12, 1971, a resident of Shelbyville, Tenn. His last will and testament nominated and appointed his widow, Bettie Short (subsequently Hawkins through remarriage), as executrix, and she duly qualified as such on September 16, 1971. Bettie Short was a resident of Shelbyville, Tenn., at the time the petition was filed. She filed the estate tax return on July 14, 1972, with the Southeast Service Center, Memphis, Tenn.

Decedent was married to Ardath Short from 1934 to May 21, 1953, on which date they were divorced. Two children were born of that marriage, Bobby Short in 1937 and Jacqueline Short Porterfield in 1939. Decedent was married to Bettie Short from July 26, 1955, until his death. Two children were born of that marriage, Ann Short in 1956 and Samuel Short in 1958.

---

[1] In his statutory notice of deficiency, respondent determined an estate tax deficiency of $69,208.63. Under an alternative position raised in an amendment to his answer, respondent determined a deficiency of $76,975.34 in estate tax. See text, *infra.*

[2] All section references are to the Internal Revenue Code of 1954, as in effect on the date of decedent's death, Sept. 12, 1971, unless otherwise noted.

Decedent left the following survivors: his widow, Bettie Short; his four children named above; two brothers, Edward and Carl Short; and a sister, Wilda Short Perry.

For many years prior to his death, decedent was president and director of Fayco Lumber & Supply Co. At his death he owned 192 shares of Fayco Lumber & Supply Co. stock (sometimes hereinafter referred to as the Fayco stock). Decedent had worked as a public accountant for many years prior to entering the building supply and farming businesses.

While on a business trip in South Dakota in May 1971, decedent sustained a heart attack and was placed in a cardiac care unit in a hospital in Aberdeen, South Dak. On May 21, 1971, while he was in the hospital, decedent executed his will. Its pertinent provisions are as follows:

### ARTICLE I

I hereby direct that all of the expenses of my last illness and funeral be paid out of my estate. I further direct that all inheritance, estate, succession or other similar taxes shall be paid out of the residue of my estate as a part of the expenses of the administration and shall not be charged against the respective beneficiaries.

### ARTICLE II

I give, devise and bequeath unto the COMMERCE UNION BANK of Nashville, Tennessee, and my wife, BETTIE SHORT, as Co-Trustees, for the use and benefit of my children, ANN SHORT and SAM SHORT, my farm located in Bedford County, Tennessee, my real property in Oak Hill, West Virginia (on which is located an apartment house), another parcel of real property in Oak Hill, West Virginia, on which is located a Kroger grocery store, all notes receivable owned by me, all of my stock in the Peoples Bank, all of my stock in the New River Banking and Trust Company, and all of my stock in any insurance company, to be by them held, managed, administered, and the principal thereof and the income therefrom held and distributed as follows:

\* \* \*

### ARTICLE VI

I give, devise and bequeath the real property on which is located my home in Shelbyville, Bedford County, Tennessee, all of my other personal property, including all horses, cattle and livestock of every kind to my wife, BETTIE SHORT, absolutely and in fee simple.

### ARTICLE VII

I give and bequeath twenty-five (25) shares of the capital stock in the Fayco Lumber and Supply Co. to each of the following: EDWARD SHORT, BOBBY SHORT, AND JACQUELINE SHORT PORTERFIELD.

## ARTICLE VIII

I give, devise and bequeath all of the rest and residue of my property, real, personal and mixed, wheresoever situate, one share to my wife, BETTIE SHORT, one share to my son, BOBBY SHORT, one share to my daughter, JACQUELINE SHORT PORTERFIELD, and two shares to my Trustees named in Article II for the use and benefit of my son, SAM SHORT, and my daughter, ANN SHORT, as part of the trust created in Article II and under the terms and provisions thereof.

The value of decedent's total gross estate was $783,572.40. This amount included $376,843.96 of personal property which passed under decedent's will. The items of tangible personal property, totaling $125,513.46 in value, which passed under decedent's will were as follows:

| Description | Value at date of death |
| --- | --- |
| 3 Simmental bulls and 50-percent interest in 3 others (sold 11/12/71) | $1,500.00 |
| 55 Angus cows (sold 11/12/71) | 17,475.00 |
| 31 Simmental cows | 43,270.00 |
| 52 Angus cows | 14,465.00 |
| Farm machinery | 4,710.00 |
| Horses | 31,287.50 |
| Two watches | 100.00 |
| 1969 Cadillac automobile | 3,175.00 |
| 1964 Buick automobile | 300.00 |
| 1968 International Scout automobile | 700.00 |
| Hay | 3,500.00 |
| Calves (sold 10/25/71) | 615.34 |
| Bull (sold 11/26/71) | 318.03 |
| Calves (sold 2/2/72) | 497.59 |
| Household furnishings | 3,600.00 |
| Total | 125,513.46 |

The items of intangible personal property, totaling $251,330.50 in value, which passed under decedent's will were as follows:

| Description | Value at date of death |
| --- | --- |
| 52 shares—First National Bank, Shelbyville, Tenn. | $4,940.00 |
| 192 shares—Fayco stock | 153,600.00 |
| 2 bonds—Pine Lodge Nursing & Convalescent Home, Inc. | 1,000.00 |
| 2 shares—Pine Lodge Nursing & Convalescent Home, Inc. | 0 |
| 1 share—River Bend Country Club | 750.00 |
| 29 shares—Guaranty Financial Corp | 14.50 |
| 3 shares—Bedford Farmer's Co-op | 3.00 |
| 1 share—White Oak Country Club | 100.00 |
| 20 shares—Tennessee Producers Livestock Marketing Association, Inc. | 200.00 |
| Checking accounts | 14,981.20 |

| | |
|---|---|
| Certain claims against John Victor Thompson | 10,000.00 |
| Cash value of insurance | 2,283.56 |
| Cash value of insurance | 2,166.23 |
| Accounts due at death from livestock and semen sales | 2,346.15 |
| Claim for refund of insurance | 1,480.00 |
| Account due from Short, Thompson, & Rowland | 1,386.66 |
| Federal income tax refund | 2,379.55 |
| Cash | .03 |
| 50 shares—New River Banking & Trust Co. | 25,000.00 |
| All notes receivable owned by decedent | 27,619.62 |
| All stock in Peoples Bank | 0 |
| All stock in any insurance company | 1,080.00 |
| Total | 251,330.50 |

The real property, totaling $287,475 in value, which passed under decedent's will, was as follows:

| Description | Value at date of death |
|---|---|
| To widow, Bettie Short (house and lot, Bedford County, Tenn., article VI of will) | $38,500 |
| To trust for Ann and Sam Short (farm in Bedford County, Tenn., article II of will) | 125,000 |
| To trust for Ann and Sam Short (commercial buildings, Oak Hill, W. Va., article II of will) | 122,900 |
| To residue (lot in W. Va., article VIII of will) | 1,075 |
| Total | 287,475 |

The value of assets passing outside the will, composed of life insurance and two gifts in contemplation of death, was $119,253.44. Of this amount the following assets valued at $56,734.68 passed outside the will to decedent's surviving spouse, Bettie Short:

| | |
|---|---|
| Insurance | $35,242.09 |
| Transfers in contemplation of death | 21,492.59 |
| Total | 56,734.68 |

Decedent's estate was subject to debts and funeral and administration expenses in the total amount of $202,799.24,[3] including an indebtedness of $47,702.05 to the New River Banking & Trust Co., Oak Hill, W. Va. The $47,702.05 indebtedness was secured by the commercial real estate in Oak Hill, W. Va., which was devised in accordance with article II of decedent's will. No legal action or claim was filed

[3] This figure includes a $14,679.88 obligation to decedent's two children of his first marriage, which was satisfied by insurance.

against decedent's estate by the New River Banking & Trust Co. in respect of the $47,702.05 indebtedness. The last date permitted under Tennessee law for the filing of claims against decedent's estate was March 24, 1972.

Petitioner claimed a marital deduction of $250,886.05 on the Federal estate tax return filed July 14, 1972, in which it reported a total gross estate valued at $755,326.39, and computed the Federal estate tax liability to be $45,544.56. In his statutory notice of deficiency dated July 11, 1975, respondent determined the marital deduction to be $122,799.62 on a corrected total gross estate value of $804,068.18 and computed the Federal estate tax liability to be $114,753.19. Petitioner filed a petition with this Court, and in an amendment to his answer, respondent alleged in the alternative that the allowable marital deduction was $95,234.68 and that the recomputed Federal estate tax liability was $122,519.90.

## OPINION

Under section 2056(a) and (c)(1),[4] the marital deduction cannot exceed the lesser of "the value of any [property] interest which passes or has passed from the decedent to his surviving spouse" or "50 percent of the value of the adjusted gross estate." Section 2056(b)(4)(A) and (B)[5] provides that

---

[4] SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.

(a) ALLOWANCE OF MARITAL DEDUCTION.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

\* \* \*

(c) LIMITATION ON AGGREGATE OF DEDUCTIONS.—

(1) GENERAL RULE.—The aggregate amount of the deductions allowed under this section (computed without regard to this subsection) shall not exceed 50 percent of the value of the adjusted gross estate, as defined in paragraph (2).

[5] SEC. 2056(b). LIMITATION IN THE CASE OF LIFE ESTATE OR OTHER TERMINABLE INTEREST.—

\* \* \*

(4) VALUATION OF INTEREST PASSING TO SURVIVING SPOUSE.—In determining for purposes of subsection (a) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this section—

(A) there shall be taken into account the effect which the tax imposed by section 2001, or any estate, succession, legacy, or inheritance tax, has on the net value to the surviving spouse of such interest; and

(B) where such interest or property is encumbered in any manner, or where the

valuation of the interest passing to the surviving spouse requires that (A) the effect of "any estate, succession, legacy, or inheritance tax" shall be taken into account, and (B) where such interest in property is encumbered, "such encumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined." This statutory language has been interpreted to mean that the marital deduction "is based upon the net value of the bequest to the wife which in turn is affected by the *liability* of the bequest for the payment of debts, taxes, etc." *Estate of Wycoff v. Commissioner*, 59 T.C. 617, 621 (1973), affd. 506 F.2d 1144 (10th Cir. 1974); see also *Thompson v. Wiseman*, 233 F.2d 734, 737 (10th Cir. 1956); *Estate of Roney v. Commissioner*, 33 T.C. 801, 804 (1960), affd. per curiam 294 F.2d 774 (5th Cir. 1961).

The property from which decedent's debts and taxes are payable and the order of payment of those items are governed by the applicable State law. *Riggs v. del Drago*, 317 U.S. 95, 97–98 (1942); *Greene v. United States*, 476 F.2d 116, 117–118 (7th Cir. 1973). Under Tennessee law the provisions of a decedent's will must be consulted in ascertaining the manner in which his property will be used to pay such obligations. Tennessee Code Annotated section 30–1117 (1955) provides that Federal estate taxes are to be prorated in accordance with that section among beneficiaries and persons interested in the estate "except in a case where a testator otherwise directs in his will." Similarly, although all of a debtor's property is available for the satisfaction of his debts, the general rule under Tennessee law is that personal property must be applied to the payment of debts before real estate may be sold, unless the will directs otherwise. Tenn. Code Ann. secs. 30–508, 30–602, 30–603, and 30–604 (1955).

The parties agree that sufficient personal property exists to pay decedent's debts and taxes, but there is not enough also to satisfy all legacies. Therefore, it is necessary to classify the legacies in order to identify those which must abate.

---

surviving spouse incurs any obligation imposed by the decedent with respect to the passing of such interest, such encumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined.

Pritchard, Wills and Estates (3d ed. 1955), the authoritative text on Tennessee law of wills, describes general and specific legacies as follows (vol. 1, sec. 460):

A *general* legacy is one which is payable out of the general assets of the estate, and which may be satisfied without delivering any particular thing or fund forming part of the testator's estate. A *specific* legacy is the converse of this; it is the bequest of a specific article of the testator's estate, and necessitates the delivery of that identical thing, distinguished from all others of the same kind. * * *

Familiar terms, such as "my," "in my possession," "standing in my name," or "owned by me," and other phrases expressing identity and not quantity, are spoken of in the books as characterizing a specific legacy. * * * [Fn. refs. omitted.]

Under Tennessee law the order in which assets must be applied to the payment of debts, stated in 1 Pritchard, *supra*, sec. 471, provides guidance for the abatement or reduction of legacies as follows:

If the estate is sufficient to pay all the debts and other charges upon it, and all of the gifts provided for in the will, there is no difficulty in complying with the directions of the will; but if it is not sufficient for these purposes, then the legacies must be abated, diminished or reduced, so that the full amount given by the will may not be received. In such case, as between legatees, devisees, heirs, and next of kin entitled to the surplus after the payment of debts, the order in which the assets must be applied to the payment of debts is the following: 1. Personal estate not disposed of at all by the will or only disposed of by being included in the residuary clause. 2. Lands expressly devised to be sold for the payment of debts and not merely charged with their payment. 3. Real estate descended to the heir, not charged with the debts. 4. Real estate devised, and personalty specifically given to devisees or legatees, subject to the payment, or charged with the payment of debts. 5. General pecuniary legacies. 6. Real estate devised not charged with debts, and personal property specifically given, both standing on the same footing. * * *

It will be seen that specific legacies, and devises of land which are always specific, constitute the preferred class, and do not abate unless the deficiency is so great as to render a resort to them necessary; and when they do abate, they abate ratably. * * * [Fn. refs. omitted.]

In construing decedent's will for the purpose of classifying the legacies and devises, the Court must consider the entire document, giving all the words used therein a natural and sensible meaning. The Court will not consider some words and disregard others. Nor will it add words not there or give certain words a strained or peculiar meaning where such does not appear to be what the testator intended.

The respective positions of the parties on the interpretation of decedent's extremely ambiguous will raise a series of questions:

(1) What "personal property" passed to the surviving spouse under article VI of the will?

(2) Is article VII a general or specific bequest of 75 shares of Fayco stock?

(3) Did article II pass the real property in Oak Hill, W. Va., to the trust subject to the $47,702.05 mortgage debt or was that debt chargeable against decedent's personal estate?

(4) What was the effect of the provision in article I that "all inheritance, estate, succession or similar taxes shall be paid out of the residue of my estate as a part of the expenses of the administration and shall not be charged against the respective beneficiaries" when read in conjunction with article VIII?

### 1. *The Extent and Nature of the Bequest in Article VI*

Under article VI of the will, decedent devised to his wife real estate valued at $38,500. Petitioner argues that other language in article VI giving her "all of my other personal property, including all horses, cattle and livestock of every kind," passed all of decedent's personal property, both tangible and intangible not transmitted by articles II and VII, and that this was a specific bequest. Respondent contends that the language of this article did not pass decedent's intangible personal property and conveys only a general bequest of his tangible personal property.

Reading the will as a whole, we think the most reasonable construction is that article VI passed only decedent's tangible personal property. To construe that article to transmit all intangibles would emasculate a portion of article VIII, giving "all of the rest and residue of my property, * * * personal and mixed" to specifically named beneficiaries. Article VIII would have transmitted the residue to the other beneficiaries named therein only if the surviving spouse renounced the will or the bequests to her became ineffective for some other reason. We do not think this was intended.

Moreover, the general rule is that, in the absence of any language in the will or circumstances of the testator indicating a contrary intent, a gift of "personal property" is interpreted as being restricted to tangible chattels. See

*Blakeman v. Harwell,* 198 Ga. 165, 31 S.E.2d 50, 56–57 (1944); *Obetz v. Boatmen's Nat. Bank of St. Louis,* 361 Mo. 221, 234 S.W.2d 618, 623–624 (1950); *McLane v. Chancey,* 211 Ark. 280, 200 S.W.2d 782, 784–785 (1947); *Lynn v. Stricker,* 213 S.W.2d 672, 675 (Mo. Ct. App. 1948). In the instant case, articles II and VII passed certain described intangibles and article VI refers to "my other personal property." Nowhere else in the will is there any reference to personal property which would possibly include tangibles (except as part of the residue, passed by article VIII). Also, the illustrations of the kinds of personal property intended to be included ("all horses, cattle and livestock of every kind") were all tangibles, and the doctrine of ejusdem generis[6] supports the limitation of the provision to personal property of that character. See *Ward v. Curry's Ex'r,* 297 Ky. 420, 180 S.W. 2d 305, 308–309 (1944) (testatrix gave "my personal property, such as clothing, jewelry, etc."); *Bond v. Martin's Adm'r.,* 76 S.W. 326 (Ky. Ct. App. 1903) (testatrix gave "furniture, bedding, silver, * * * all personal property wherever it may be"). We conclude, therefore, that the reference in article VI to "personal property" relates only to tangibles.

However, we think article VI was intended to pass a specific rather than a general legacy of decedent's tangibles. In article II, decedent created the trust for his children, Ann and Sam, approximately 15 and 13 years of age, respectively, when his will was signed. In article VI he provided for his widow, giving her their home and, as we have decided, his tangible personal property. He made no other provision for her in his will except for one-fifth of the residuary estate pursuant to article VIII. His only tangible personal property other than those items specifically enumerated (i.e., "all horses, cattle and livestock") were his watches, automobiles, household furnishings, and some hay (usable for the livestock) and farm machinery. All except the last two items are the kind of property which would be expected to pass specifically to a

---

[6] In Tennessee the rule of "ejusdem generis" is that where certain things are enumerated in a will provision and a more general description is coupled with the enumeration, the general expression (except where the general words are in the residuary clause) is understood to cover only things of the same nature or class as those enumerated. *Jarnagin v. Conway,* 21 Tenn. (2 Humph.) 50 (1840); *Fry v. Shipley,* 94 Tenn. 252, 29 S.W. 6, 8 (1895).

surviving spouse, and the last two are related to the ones specifically enumerated in that article.

Were petitioner correct in its view that article VI passed all of decedent's personal property, both tangible and intangible, respondent might well be correct in his position that the legacy was a general one since article VI would then be in the nature of a residuary clause. See *Goforth v. Goforth*, 202 Ark. 1017, 154 S.W.2d 819, 820–821 (1941) ("all of my personal property of whatsoever kind and wheresoever situated left by me at my death"); *Tagnon's Adm'x v. Tagnon*, 253 Ky. 374, 69 S.W.2d 714, 715 (1934) ("All the property, real and personal * * * which I may own or have the right to dispose of at the time of my decease"). However, since that article passed only "all of my" tangible personal property, some specifically enumerated and the rest readily identifiable, and since articles II, VII, and VIII passed other personal property, we are of the opinion that this bequest to the surviving spouse was an express gift of a specified portion of decedent's estate.

Thus, in *Reid v. Corrigan*, 143 Ill. 402, 32 N.E. 387, 388 (1892), where the testator specifically devised certain land and a homestead to his wife and then bequeathed her "all my personal property of every description," bequeathed a sum of money to his niece, devised a specific piece of property to charity, and then devised all the rest, residue, and remainder of his real estate to named beneficiaries, it was held that the bequest of the personal property to his wife was specific. Similarly, in *In re Gruner's Estate*, 269 Pa. 573, 112 A. 753, 754 (1921), where in his will the testator, after directing payment of debts and making two pecuniary legacies, bequeathed to a niece "absolutely all * * * [my] personal property," particularly described as personal property, bonds, mortgages, certificates of stocks, household furniture, jewelry, ornaments, and articles of decoration, and followed this bequest by a residuary clause in which he directed all the rest and remainder of his estate, consisting of practically all real property, to be divided among persons named, it was held that the bequest to the niece was specific. See also *Weed v. Hoge*, 85 Conn. 490, 83 A. 636, 639 (1912); *Bales v. Murray*, 186 Iowa 649, 171 N.W. 747, 749 (1919).

## 2. *The Nature of the Article VII Bequest of Fayco Stock*

We think article VII, transmitting 75 shares of Fayco stock, is clearly a general bequest. All other provisions of the will, particularly articles II and VI, refer to "my" property or property "owned by me," language ordinarily indicative of a specific legacy. 1 Pritchard, *supra*, sec. 460, quoted above; see also *Gorham v. Chadwick*, 135 Me. 479, 200 A. 500, 502 (1938) ("my stock in Houlton Trust Company"); *Gardner v. McNeal*, 117 Md. 27, 82 A. 988, 991 (1911) ("my railroad stock"); *Quill v. Schlichter*, 121 N.J. Eq. 149, 188 A. 237, 238–239 (1936) ("ten shares of my stock in the Henry H. Ottens Manufacturing Company"); *In re Horn's Estate*, 317 Pa. 49, 175 A. 414, 416 (1934) ("my Ohio Fuel Corporation stock"); *In re Hinners' Will*, 216 Wis. 294, 257 N.W. 148, 150 (1934) ("two hundred twenty-five (225) shares of my stock in the Geo. H. Smith Steel Casting Company"). However, bequests of a stated number of shares of stock in a corporation, without further identification of such shares or absent a showing of a contrary intention of the testator, are regarded as general or demonstrative bequests. See *Slade v. Talbot*, 182 Mass. 256, 65 N.E. 374 (1902) ("To * * * five shares of the Laurel Lake Mills"); *Adams v. Conqueror Trust Co.*, 358 Mo. 763, 217 S.W.2d 476, 478–479 (1949) ("forty shares of common stock of the E. I. du Pont de Nemours & Company," contrary intent shown); *Bond v. Evans*, 92 Colo. 1, 17 P.2d 311, 312 (1932) ("Fifteen (15) shares New York Central Railroad Stock"); *Spinney v. Eaton*, 111 Me. 1, 87 A. 378, 379–380 (1913) ("I give and bequeath to * * * fifty shares of my preferred stock in the J. L. Prescott Company"); *In re Snyder's Estate*, 217 Pa. 71, 66 A. 157, 158 (1907) ("I also give and bequeath to * * * six hundred dollars of bank stock of the Second National Bank of Mercer"). The circumstance in the instant case that at his death decedent owned a sufficient amount of the stock (192 shares) to satisfy the bequest (75 shares) is not enough to render the gift specific. See *In re Blackmun's Estate*, 98 Cal. App. 2d 314, 220 P.2d 30, 32 (2d Dist. Ct. App. 1950); *Cornelson v. Vance*, 220 S.C. 47, 66 S.E.2d 421, 425 (1951); *In re Blomdahl's Will*, 216 Wis. 590, 257 N.W. 152, 153 (1934); *Evans v. Hunter*, 86 Iowa 413, 53 N.W. 277, 278 (1892).

Nor do we think, after a careful study of Tennessee law, that the bequest fits into the category of a demonstrative

legacy. 1 Pritchard, *supra,* section 461, defines a demonstrative legacy as "a bequest of a certain sum of money to be paid out of a particular fund pointed out by the testator, or of a sum payable out of the proceeds of particular property designated by him." The typical example of a demonstrative legacy is a pecuniary bequest of a designated amount to be paid out of particular securities owned by the testator, such as a gift of "$10,000 in such * * * stocks * * * as I may leave." See *Martin v. Osborne,* 85 Tenn. 420, 424, 3 S.W. 647, 649 (1887). The bequest in article VII does not reflect an intention that the bequest necessarily be taken from the Fayco shares owned by decedent at his death. It is a general bequest of a stated number of shares of Fayco stock.

### 3. *The Extent of the Interest in Real Estate Passed by Article II*

Respondent contends that article II passed the West Virginia real estate to the trust free and clear of the $47,702.05 mortgage and that such debt was payable out of other assets of the estate. Petitioner contends that article II passed only decedent's equity interest in the real estate and that other assets of the estate may not be charged with the mortgage debt.[7] The effect of adoption of petitioner's theory would be to exempt the personal assets passing to decedent's surviving spouse from being charged with satisfaction of any part of this debt, thereby possibly increasing her marital deduction.

The general rule in Tennessee is that, unless the will or statute specifies otherwise, a devisee is entitled to have the

---

[7] Sec. 20.2053–7, Estate Tax Regs., prescribes the manner in which unpaid mortgages are to be reported on the estate tax return, as follows:

Sec. 20.2053–7 Deduction for unpaid mortgages.

A deduction is allowed from a decedent's gross estate of the full unpaid amount of a mortgage upon, or of any other indebtedness in respect of, any property of the gross estate, including interest which had accrued thereon to the date of death, provided the value of the property, undiminished by the amount of the mortgage or indebtedness, is included in the value of the gross estate. If the decedent's estate is liable for the amount of the mortgage or indebtedness, the full value of the property subject to the mortgage or indebtedness must be included as part of the value of the gross estate; the amount of the mortgage or indebtedness being in such case allowed as a deduction. But if the decedent's estate is not so liable, only the value of the equity of redemption (or the value of the property, less the mortgage or indebtedness) need be returned as part of the value of the gross estate. * * *

executor satisfy encumbrances against the land out of a decedent's personal property, and the land is not subjected thereto until the personalty is exhausted. *O'Connor v. O'Connor,* 88 Tenn. 76, 12 S.W. 447, 449 (1889); *American Surety Co. v. Grace,* 151 Tenn. 575, 271 S.W. 739, 741 (1925); *Wilson v. Smith,* 50 Tenn. App. 188, 360 S.W.2d 78, 84, 88 (1962); 1 Pritchard, *supra,* sec. 306. However, in an overwhelming majority of jurisdictions, the rule of exoneration does not apply to specific legacies and, thus, property specifically bequeathed cannot be applied to the mortgage debt.[8] *Hedger v. Judy,* 95 Ky. 557, 26 S.W. 586, 587 (1894); *Currie v. Scott,* 144 Tex. 1, 187 S.W.2d 551, 554–555 (1945); *Morgan v. Watkins,* 214 Ala. 671, 108 So. 561 (1926); *Wheeler v. Hatheway,* 54 Mich. 547, 20 N.W. 579, 580 (1884). We have found no case or statute indicating Tennessee would not follow the majority position.

The following often quoted statement from the early case of *Glass v. Dunn,* 17 Ohio St. 413, 423 (1867), explains this exception to the rule of exoneration:

> It seems to be well settled law, that a specific devisee of land incumbered by a mortgage, cannot, as between him and general pecuniary legatees— and a fortiori he cannot as between him and specific legatees or devisees— avoid the burden of paying the mortgage debt. He takes the land cum onere, unless the debt can be satisfied out of the personal assets, after payment of debts and legacies, out of land descended to the heir, or from some fund provided in the will for its payment. As between him and his co-devisees and legatees, he takes only the equity of redemption in the land devised, and must himself pay the mortgage debt, if it is to be paid.

In *Huntington Nat. Bank of Columbus v. Roan,* 43 N.E.2d 769, 775 (1931), the will gave all personal property to the widow, devised all real estate in a certain county to the testator's sons in a succeeding paragraph, and in the last paragraph gave all the rest of the property to the widow and children. The Court of Appeals of Ohio held that the property devised in the last paragraph was the residuary estate and

---

[8] Additionally, it is uniformly accepted that as between the devisee of mortgaged property and another specific devisee, the debt must be borne by the devisee of the mortgaged property, unless, as is not true in the instant case, the will otherwise directs. *Raines v. Shipley,* 197 Ga. 448, 29 S.E.2d 588, 592 (1944); *Morris v. Higbie,* 53 N.J.Eq. 173, 32 A. 372, 373 (1895); *Glass v. Dunn,* 17 Ohio St. 413, 423 (1867); *In re Porter,* 138 Cal. 618, 72 P. 173, 174–175 (1903); *In re Hodgkin's Estate,* 110 Or. 381, 221 P. 169, 170 (1923).

should be used for the payment of decedent's debts, including a debt secured by a mortgage on land devised to the sons. However, since the property included in the residuary clause was insufficient to liquidate all the debts of the decedent, the court further held that the decedent's widow would not be required to contribute to the payment of such mortgage indebtedness out of the specific bequest to her; any balance due thereon should stand as a charge on the real estate covered by the mortgage. Finally, the court held that any indebtedness remaining after exhaustion of the residue with the exception of the balance due on the mortgage must be paid out of the personal property devised to the widow.

Applying the above-cited principles, we think that, though the specifically bequeathed and specifically devised property passing to the surviving spouse under article VI of the will may be used, proportionately, to pay the debts of the decedent, no part of the $47,702.05 mortgage debt can be applied to reduce those specific bequests and devises. We hold that this mortgage debt is chargeable against the West Virginia real estate alone.

## 4. *Effect of Articles I and VIII*

The Tennessee apportionment statute provides, as pointed out above, that, "except in a case where a testator otherwise directs in his will," the Federal estate tax will be equitably prorated among persons interested in the estate to whom the property is transferred. Tenn. Code Ann. sec. 30–1117 (1955). As we read article I in conjunction with article VIII of the will, it says nothing about debts, is ambiguous as to funeral expenses, and reflects an intention that the residue, if sufficient, should bear the death taxes and administration expenses. This article has the effect of providing for payment of estate taxes out of the residue (to the extent available). Thus, resort to the Tennessee apportionment statute is not necessary.

Interpreting the will in its entirety, we conclude that the value of the property passing to decedent's surviving spouse before reduction for "debts, taxes, etc.," see *Estate of Wycoff v. Commissioner,* 59 T.C. at 621, is as follows:

| | | |
|---|---|---|
| Assets passing to widow outside the will: | | |
| Insurance | $35,242.09 | |
| Transfers in contemplation of death | 21,492.59 | |
| | | $56,734.68 |
| Assets passing to widow under article VI of the will: | | |
| Realty | 38,500.00 | |
| Tangible personal property | 125,513.46 | |
| | | 164,013.46 |
| Total | | 220,748.14 |

Under our construction of article VI of the will, all intangible personal property not bequeathed by articles II and VII passed into the residue along with the single piece of real property having a value of $1,075 which was not disposed of by any other provision of the will. Under articles I and VIII, therefore, this property having a total value of $138,705.88[9] is applied to the payment of death taxes and administration expenses. The balance, if any, of the residue is first applied to the funeral expenses and debts of decedent (excluding the $47,702.05 mortgage debt). Next, the general bequest in article VII of the Fayco stock valued at $60,000 must abate and be applied to the debts. Finally, since all other property in the estate consists of specific bequests of personalty and specific devises of real estate (including the specific devise of

---

[9] The real property and intangible personal property passing under arts. I and VIII of the will are as follows:

| | |
|---|---|
| Lot—Oak Hill, W. Va. | $1,075.00 |
| 117 shares—Fayco stock | 93,600.00 |
| 52 shares—First National Bank, Shelbyville, Tenn | 4,940.00 |
| 2 bonds—Pine Lodge Nursing & Convalescent Home, Inc... | 1,000.00 |
| 2 shares—Pine Lodge Nursing & Convalescent Home, Inc . | 0 |
| 1 share—River Bend Country Club | 750.00 |
| 29 shares—Guaranty Financial Corp | 14.50 |
| 3 shares—Bedford Farmer's Co-op | 3.00 |
| 1 share—White Oak Country Club | 100.00 |
| 20 shares—Tennessee Producers Livestock Marketing Association, Inc | 200.00 |
| Checking accounts | 14,981.20 |
| Certain claims against John Victor Thompson | 10,000.00 |
| Cash value of insurance | 2,283.56 |
| Cash value of insurance | 2,166.23 |
| Accounts due at death from livestock and semen sales | 2,346.15 |
| Claim for refund of insurance | 1,480.00 |
| Account due from Short, Thompson, & Rowland | 1,386.66 |
| Federal income tax refund | 2,379.55 |
| Cash | .03 |
| Total | 138,705.88 |

realty and specific bequest of tangible personal property to the surviving spouse), it is chargeable proportionately to the remainder of the debts. The value of the property passing to the surviving spouse, for purposes of the marital deduction, is thus reduced to the extent of this abatement.

To reflect the foregoing,

*Decision will be entered under Rule 155.*